Cite as 2023 Ark. 41

# SUPREME COURT OF ARKANSAS

**No.** CR–21–78

| | |
|---|---|
| | **Opinion Delivered:** March 16, 2023 |
| DEMARCUS DONNELL PARKER | |
| APPELLANT | APPEAL FROM THE CRITTENDEN COUNTY CIRCUIT COURT |
| V. | [NO. 18CR-18-425] |
| STATE OF ARKANSAS | HONORABLE RANDY PHILHOURS, |
| APPELLEE | JUDGE |
| | |
| | REVERSED AND DISMISSED. |

**JOHN DAN KEMP, Chief Justice**

Appellant Demarcus Donnell Parker appeals a Crittenden County Circuit Court order convicting him of first-degree murder, one count of first-degree unlawful discharge of a firearm from a vehicle, fifteen counts of second-degree unlawful discharge of a firearm from a vehicle, six counts of first-degree attempted murder, and sentence enhancements. He was sentenced to an aggregate of two life sentences plus 835 years' imprisonment. For reversal, Parker makes numerous allegations of error, including a violation of his right to speedy trial. We reverse and dismiss.

## I. *Facts*

### A. Factual History

On April 28, 2018, West Memphis police officers arrived at Meadows Apartments where they found an off-duty police officer, Oliver Johnson, suffering from a gunshot wound and lying on the bedroom floor of his apartment. A group of teenagers outside the

apartment building noticed a "blue Malibu" that had entered the parking lot playing loud music. The teenagers heard gunshots from the vehicle and scattered. One of the teenagers identified Parker as one of the vehicle's three occupants. During their investigation, police officers found numerous shell casings in the parking lot. The officers learned that the Meadows Apartments shooting was a purported retaliation for a shooting at an apartment complex across town that had occurred earlier that day. Johnson subsequently died from his injuries.

B. Pretrial Procedural History

On May 9, 2018, officers arrested Parker, and he was initially charged with capital murder and twenty-two additional counts related to the shooting. The State waived the death penalty. On March 24, 2020, the State filed an amended felony information and reduced the capital-murder charge to first-degree murder. The other charges included one count of first-degree unlawful discharge of a firearm from a vehicle, six counts of first-degree attempted murder, fifteen counts of second-degree unlawful discharge of a firearm from a vehicle, forgery, and a firearm enhancement. Parker was also charged with enhancements for engaging in violent criminal group activity and, on the murder count, for committing a felony in the presence of a child.

The record contains several orders rescheduling motion-and-plea dates and jury trials. Two orders—August 10, 2018, and January 3, 2019—tolled speedy trial, while the others— entered on March 1, 2019; May 10, 2019; July 22, 2019; September 9, 2019; and November 4, 2019—did not toll speedy trial. On October 18, 2019, after a series of rescheduling orders, the deputy prosecuting attorney emailed the circuit court requesting a special trial setting

2

and asking that the time be tolled until the matter could be set for trial. On November 4, 2019, the circuit court reset a motion-and-plea date for January 2, 2020, and for jury trial to begin on January 13–17, 2020.

Subsequently, on December 4, 2019, without a file-marked motion by Parker or the State, the circuit court entered an order, ruling that

> 2. Defendant Parker was arrested on or about May 9th, 2018. As to Parker, the time calculations for application of Rule 28 up to October 18th, 2019 are as follows:
>
> a. May 9th, 2018 Arrest to October 18th, 2019: 527 days.
>
> b. August 10th, 2018 – March 18th, 2019: Continuances at the request of the defendant – 220 days.
>
> c. Time chargeable to the State of Arkansas as of October 18th, 2019 pursuant to Rule 28: 307 days.
>
> d. Time remaining as of October 18th, 2019: 58 days (December 15th, 2019).
>
> . . . .
>
> 6. Due to the number of witnesses, the factual allegations, and the complexity of the trials in the above matters, the State of Arkansas has requested a special trial setting of three weeks to try the above matters before a Crittenden County jury.
>
> 7. Scheduling a three-week trial in a single division of the Circuit Court requires the coordination of numerous divisions of the Circuit Court to rearrange scheduled court terms, both criminal and civil, throughout the six counties that make up the Second Judicial District; as well as coordinating for substitute judges to fill in where schedules cannot be rearranged.
>
> 8. In addition to the above, there are only two courtrooms in the Crittenden County Courthouse that are configured for jury trials; and only one of those is equipped with the necessary electronic equipment necessary to conduct the complex trials in these matters. As a result, scheduling a three-week trial will require extensive coordination so as to provide courtroom space for the conduct of this trial as well as other matters, both civil and criminal, that will be scheduled during that three-week period.

9. In June 2019, Boone Nance, who was the full–time Deputy Prosecuting Attorney for Crittenden County[,] retired. As a result, a new Deputy Prosecuting Attorney, Michael Snell ("Snell"), was assigned to Division 11, who immediately assumed responsibility for this division's trial docket. This necessitated a delay to allow Snell to become familiar with these complex cases, along with numerous other cases that were pending trial in this division. As a result, requiring Snell to conduct the trial of these matters prior to familiarizing himself with these cases prior to October 18th, 2019 would have resulted in considerable prejudice to the State of Arkansas.

. . . .

11. The court finds that [the] defendant has [not] moved to enforce his right to speedy trial.

12. The court finds that there is good cause for delay pursuant to the provisions of Ark. R. Crim. P. 28.3(h) to allow the court to coordinate and schedule a special trial term for the trial of these matters as detailed above and that such time between October 28th, 201[9] until such trial is scheduled should be excluded from the Speedy Trial provisions of Rule 28.

13. The court finds that there is good cause for delay due to a congested docket [.]

. . . .

19. For all of the above reasons, the court finds that the period from October 18th, 2019 until this matter is scheduled for a three-week jury trial should be excluded from calculations for Speedy Trial under Rule 28 of the Arkansas Rules of Criminal Procedure.

Sua sponte, the circuit court retroactively tolled speedy trial from October 18, 2019, until a jury trial at a future date that had yet to be determined. No contemporaneous docket entry, written order, or pretrial colloquy reflected that any portion of the time from October 18, 2019, to December 4, 2019, had been tolled, and the court had not yet held an on-the-record hearing discussing these matters.

4

On January 6, 2020, Parker filed a motion to dismiss stating that he was arrested in May 2018, twelve months had passed since the date of his arrest, and his case should be dismissed pursuant to Rule 28 of the Arkansas Rules of Criminal Procedure. On May 21, 2020, the circuit court entered an order of continuance because of pandemic delays and continued the matter to August 18, 2020, for "Chamber Day" and August 31 through September 4, 2020, for Parker's jury trial. Again, on August 17, 2020, Parker filed a motion for speedy trial stating that "[t]ime has run in excess of one (1) year and, accordingly, that this matter shall be nolle prossed." He filed the same motion for speedy trial on August 20, 2020.

At an August 31, 2020, hearing, the day before Parker's jury trial and the first hearing to be held on the record, the circuit court considered his speedy-trial motion. Carter Dooley, Parker's trial counsel, argued that he never agreed to the sua sponte December 4 order and that certain periods were not excludable pursuant to Rule 28. The circuit court stated that "there was an off-the-record discussion in chambers" and that Bryan Donaldson, Parker's trial co-counsel, had been present for the in-chambers discussion. The circuit court denied the speedy-trial motion. From September 1, 2020, to September 8, 2020, the circuit court held Parker's jury trial. At the conclusion of the evidence, Parker was found guilty of all counts and the enhancements except the forgery charge and was sentenced to two life sentences followed by 835 years, to be served consecutively. Parker timely appealed.

C. Posttrial Procedural History

On September 22, 2020, approximately two weeks after the conclusion of Parker's jury trial and approximately nine months after the circuit court's December 4 order, Michael

5

Snell, the deputy prosecutor, filed an affidavit stating that on October 18, 2019, he had requested a special setting in the matter. Specifically, Snell stated:

> 2. During the Division 11 trial term of November 4th – 8th, 2019, the court met with counsel for defendant Demarcus Parker (Attorney Bryan Donaldson) and the Deputy Prosecuting Attorney in chambers in the Crittenden County Courthouse in Marion, Arkansas. . . . During that conference, the State's request for a trial setting was discussed, and the issue of speedy trial was raised. After discussion, the court sua sponte directed counsel to prepare an order tolling the time for speedy trial due to the necessity of setting a three-week trial for the matter.
>
> . . .
>
> 4. On December 4th, 2019, the Deputy Prosecutor sent to the court a proposed order in compliance with the court's earlier instructions (See, ¶ 2 above). The proposed order was sent by email to the court and to all counsel . . . [.]
>
> . . . .
>
> 6. On December 6th, 2019, Demarcus Parker's counsel, Carter Dooley, sent to the court an email wherein he stated that he could not approve of the previously entered order . . . [.]
>
> . . . .
>
> 14. At no time prior to the trial of this matter did counsel for Demarcus Parker file any motion to set aside the December 4th, 2019 order; nor was a formal objection filed. Furthermore, no demand for hearing on the matter was ever made by counsel for Demarcus Parker until the trial week, which convened on August 31st, 2020. Instead, counsel for Demarcus Parker filed, on January 6th, 2020, a Motion for Speedy Trial, which made no reference to the court's December 4th, 2019 order. The same motion was filed again on August 17th and again on August 20th, 2020. None of those motions were set for hearing prior to the trial of this matter.

Snell attached an email that he had sent to the circuit court's trial assistant on December 4, 2019, at 1:03 p.m. The email copied defense counsel and the circuit court. The email noted that Snell had attached a proposed order about speedy trial and "[a]s instructed, it contains both the kitchen sink and all the plumbing[.]" Snell advised defense counsel that they could object by email directly to the circuit court. The record then reflects

that the circuit court entered that order the same day at 4:24 p.m., just over three hours after Snell's email had been sent.

Also attached to Snell's affidavit was a December 6 email from Dooley stating that "[t]here are a number of assertions in the order that we simply do not agree with and cannot concede. There has been no motion prepared by the State, which I certainly think needs to precede a proposed Court order. I would respectfully request that we set this matter for a hearing upon Mr. Snell filing the requisite motion." In an email to the parties, the circuit judge replied,

> This matter must be resolved ASAP. . . . It is the court[']s position that docket congestion should exclude some time for speedy trial in this case. I have not looked at the docket itself to see what should be excluded up to this point. However, setting a three-week trial in a circuit that is broken up in weekly increments, in a courthouse that has only two courtrooms, only one of which can accommodate a jury, in a county that has an extremely large docket is a legitimate basis for rule 28 to be invoked.

On February 22, 2021, Parker filed a petition for writ of certiorari to complete the record or, in the alternative, motion to remand to settle the record. In his petition, he stated that "appellate counsel discovered that the record does not contain any of the pleadings from Appellant's case" and that "counsel need[ed] the pleadings inserted into the record in order to effectively identify and argue the issues" in Parker's appeal. We granted Parker's petition on April 8, 2021.

Parker filed a second petition for writ of certiorari on December 12, 2021, to complete the record or, in the alternative, motion to remand to settle the record. In his petition, he claimed,

> 3. The record contains references to an off-record discussion that purportedly occurred between the circuit court, the State, and one of Appellant's attorneys at

7

some point between October 18, 2019 and December 4, 2019. At an August 31, 2020 hearing on Parker's motion to dismiss based on a violation of his right to a speedy trial, the trial court noted there had been "an off-the-record discussion in chambers" and that one of Parker's attorneys, Bryan Donaldson, had been present. According to the circuit court, Donaldson "participated in that discussion about" continuing Parker's then-trial date. The circuit court acknowledged that it then issued a scheduling order continuing Parker's jury trial on December 4, 2019 sua sponte.

4. The circuit court did not specify whether Donaldson made any objection to the tolling of speedy trial, or whether speedy trial was even discussed. Donaldson made no statement on record about this "discussion," and vehemently contests the circuit court's characterization of such. Further, it does not appear that Parker was present for or notified of this "discussion" until the circuit court's December 4th, 2019 order several days or weeks later.

Parker petitioned this court to issue a writ of certiorari to the court reporter and the Crittenden County Circuit Clerk directing that all pretrial hearings, including the purported off-record hearing that occurred between October 18, 2019, and December 4, 2019, be transcribed.

The State responded that

the circuit court subsequently conducted an inspection of the existing courtroom facilities, which also included an off-the-record discussion of the State's request that—as emphasized by the circuit court at the August 31, 2020, pre-trial hearing—included the participation of Parker's trial counsel, Bryan Donaldson. . . [T]he circuit court specifically recollected that counsel for appellant was present for the consideration of the State's request.

On January 13, 2022, we granted Parker's petition for writ of certiorari to complete the record. On March 22, 2022, the circuit court conducted a hearing to settle the record, pursuant to this court's holding in *Lewondowski v. State*, 2021 Ark. 132, during which Parker was represented by counsel. At the hearing, the circuit court recollected that "[a]mong other lawyers in chambers and in the hallway leading between the courtroom and chambers were Mr. Snell [prosecutor], Mr. Donaldson [defense co-counsel], and me. Mr. Dooley did not

8

appear on that day again, and during the break, I—I don't know if Mr. Parker was here that day or not either." The circuit court recalled that it instructed the prosecutor to prepare an order tolling speedy trial for docket congestion; the circuit court also told the prosecutor that the order should "'includ[e] the kitchen sink' as to the reasons that we couldn't get the [jury trial] scheduled." The court further recalled that he had given "basically a sua sponte order by me to the prosecutor in the presence of one of the defense lawyers[.]"

Donaldson disputed the circuit court's recitation of the facts, noting that he "caught the tail end of it[.] . . . Demarcus wasn't here. I mean, I just happened to walk in chambers. Nobody summoned [me] in there or anything. I just happened to walk in and heard this going on[.]" The circuit court disagreed. The circuit court then stated that Dooley had objected to the December 4 order via email and had filed a January 6 motion to dismiss. At the conclusion of the March 22, 2022 hearing, the circuit court stated, "So that's the record. So that's what the Court finds the record to be." On April 18, 2022, Parker filed a supplemental record that does not contain the in-chambers, off-record hearing that occurred between October 18, 2019, and December 4, 2019.

## II. *Speedy Trial*

### A. Applicable Law

On appeal, Parker raises the following arguments to this court: whether (1) substantial evidence supports his convictions; (2) his due-process rights were violated when he was convicted of six counts of attempted felony murder for which he was not charged; (3) his right to a speedy trial was violated; (4) the circuit court abused its discretion by permitting the State to introduce evidence about multiple weapons being seized from Parker prior to

the charged act; (5) the circuit court abused its discretion by admitting a lineup identification as a prior inconsistent statement; (6) the circuit court abused its discretion by permitting the State to cross-examine Parker about his purported gang affiliation; (7) the circuit court abused its discretion by permitting hearsay testimony by law enforcement; and (8) Parker was denied his Sixth Amendment right to counsel at the hearing to settle the record.

As a threshold matter, we address the issue of whether Parker's right to a speedy trial has been violated. Parker argues that the State failed to bring him to trial within twelve months of the date of his arrest as required by Rule 28.1(b) of the Arkansas Rules of Criminal Procedure. Parker contends that the time period from the date of his arrest on May 9, 2018, to his trial on September 1, 2020, equals 846 days, which exceeds the 365-day speedy-trial requirement set forth in Rule 28 of the Arkansas Rules of Criminal Procedure. Further, Parker asserts that the circuit court's December 4, 2019 order failed to comply with Rule 28 and that certain time periods at issue should be charged to the State.

Citing *Eagle v. State*, 2012 Ark. 371, at 4–5 (holding that speedy trial tolled at the date speedy-trial motion was filed), the State responds that the speedy-trial calculation spans from the date of his arrest on May 9, 2018, to the date that he filed his dismissal motion on January 6, 2020, for a total of 607 days. The State contends that there are two excluded time periods: (1) from August 10, 2018, when Parker moved for an initial continuance until March 22, 2019, the date through which the circuit court ruled that speedy trial was tolled; and (2) October 18, 2019, through January 6, 2020, claiming that Parker failed to challenge the circuit court's "alternative basis for good cause to exclude [that] 80-day period of delay[.]"

The constitutional right to a speedy trial, as embodied in Rule 28.1 of the Arkansas Rules of Criminal Procedure, is available to an accused in all criminal prosecutions. *See Dority v. State*, 329 Ark. 631, 633, 951 S.W.2d 559, 561 (1997). The Sixth Amendment provides, "In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial." U.S. Const. amend. VI. This court adopted Rule 28 for the purpose of enforcing the constitutional right to a speedy trial. *Mackey v. State*, 279 Ark. 307, 311, 651 S.W.2d 82, 84 (1983).

Pursuant to Rule 28.1, any defendant charged with an offense and incarcerated in prison in this state pursuant to conviction or another offense, or lawfully held to bail or otherwise lawfully set at liberty, must be brought to trial within twelve months unless there are periods of delay that are excluded under Rule 28.3. *See Carter v. State*, 2016 Ark. 152, at 3, 484 S.W.3d 673, 674–75. If the defendant is not brought to trial within the requisite time, the defendant is entitled to have the charges dismissed with an absolute bar to prosecution. Ark. R. Crim. P. 30.1; *State v. Crawford*, 373 Ark. 95, 99, 281 S.W.3d 736, 739 (2008). Once the defendant makes a prima facie showing of a speedy-trial violation, i.e., that his or her trial took place outside the speedy-trial period, the burden shifts to the State to show that the delay was the result of the defendant's conduct or was otherwise justified. *McCray v. State*, 2020 Ark. 172, at 7, 598 S.W.3d 509, 513. A prima facie case for a speedy-trial violation is made when there is a period of delay beyond twelve months from the date of the charge. *Crawford*, 373 Ark. at 99, 281 S.W.3d at 740.

Rule 28.3 of the Arkansas Rules of Criminal Procedure governs excluded periods, when calculating speedy-trial periods, and provides in pertinent part:

The following periods shall be excluded in computing the time for trial. Such periods shall be set forth by the court in a written order or docket entry, but it shall not be necessary for the court to make the determination until the defendant has moved to enforce his right to a speedy trial pursuant to Rule 28 unless it is specifically provided to the contrary below. The number of days of the excluded period or periods shall be added to the time applicable to the defendant as set forth in Rules 28.1 and 28.2 to determine the limitations and consequences applicable to the defendant.

. . . .

(b) The period of delay resulting from a continuance attributable to congestion of the trial docket if in a written order or docket entry at the time the continuance is granted:

(1) the court explains with particularity the reasons the trial docket does not permit trial on the date originally scheduled;

(2) the court determines that the delay will not prejudice the defendant; and

(3) the court schedules the trial on the next available date permitted by the trial docket.

. . . .

(h) Other periods of delay for good cause.

We conduct a de novo review to determine whether specific periods of time are excludable under our speedy-trial rules. *Perkins v. State*, 2019 Ark. 247, at 2, 582 S.W.3d 1, 2. Once a defendant establishes that his trial took place outside the speedy-trial period, the State bears the burden of showing that the delay was the result of the defendant's conduct or otherwise justified. *Id.* at 3, 582 S.W.3d at 2–3.

## B. Speedy-Trial Analysis

The speedy-trial calculation spans from the date of Parker's arrest on May 9, 2018, to the date that he filed his dismissal motion on January 6, 2020, for a total of 607 days. *See Eagle*, 2012 Ark. 371, at 4–5. Hence, bearing the foregoing principles in mind, we set forth

the following analysis of the relevant time periods in Parker's case, including excludable time periods:

1. May 9, 2018, through August 10, 2018

Parker's speedy-trial clock began to run on May 9, 2018, the date of his arrest. Ark. R. Crim. P. 28.2(a). Speedy-trial time ran for 94 days from Parker's arrest until August 10, 2018, when the circuit court granted a continuance at Parker's request. The ruling is reflected in the circuit court's September 7, 2018 and December 4, 2019 orders. This period of 94 days is charged to the State.

2. August 11, 2018, through March 1, 2019

Speedy trial was tolled from August 11, 2018, until March 1, 2019, because of motions for continuances filed by Parker and granted by the circuit court.

3. March 2, 2019, through October 17, 2019

Parker and the State dispute whether the third block of time started on March 2, 2019, or on March 23, 2019. Two orders entered by the circuit court are at issue. The first order, entered on January 3, 2019, set Parker's jury trial for March 18 through March 22, and this order specifically stated that the time would be charged to the defense. However, the second order, entered on March 1, 2019, set Parker's jury trial for May 20 through May 24, and this order was silent on the issue of speedy trial.

Citing *Smith v. State*, 2021 Ark. App. 253, at 5, 624 S.W.3d 718, 721, Parker contends that the second order supersedes the first. In *Smith*, the circuit court had entered an order in October 2016 setting trial for February 2017 and stating that the time was not excluded for speedy-trial purposes. But the circuit court entered a new order in December

2016 moving the trial to June 2017 and noting that speedy-trial time ran against the defendant. The appellate court concluded the December 2016 order controlled, holding that a new scheduling order "essentially supersedes the preceding one." *Id*. at 5, 624 S.W.3d at 721.

We agree with the rationale in *Smith*, 2021 Ark. App. 253, at 5, 624 S.W.3d at 721. Here, the circuit court entered an order on January 3, 2019, setting a jury trial for March 18 through March 22. In this order, the circuit court specifically stated that the time would be charged to the defense. However, the circuit court subsequently entered a second order on March 1, 2019, resetting the trial date for May 20 through May 24, 2019. Significantly, the circuit court was silent on the issue of speedy trial in its second order and did not expressly toll the time running on speedy trial. Thus, we hold that the circuit court's second order supersedes the first order and that speedy trial started to run on March 2 instead of March 23. This time period equals 230 days, and as of October 17, 2019, speedy trial had run for a total of 324 days.

#### 4. October 18, 2019, through December 4, 2019

On appeal, Parker challenges the entirety of the December 4 sua sponte order. Parker argues that speedy trial was improperly tolled and that the circuit court cannot retroactively toll speedy trial for docket congestion. The State responds that the circuit court's December 4 order is valid because it tolled speedy trial by citing to "the unavailability of the necessary forum for Appellant's trial." The State further contends that Parker failed to challenge this basis for the circuit court's order, which is "good cause" under Rule 28.3(h) of the Arkansas

Rules of Criminal Procedure, and that resetting Parker's jury trial for the next available date satisfied the requirements of Rule 28.

### a. Rule 28.3(b)

Given our speedy-trial precedent, we agree with Parker that the December 4 order unequivocally does not meet the requirements set forth in Rule 28.3(b). Rule 28.3(b) allows for speedy trial to be tolled for docket congestion if the court enters an order "at the time the continuance is granted." Ark. R. Crim. P. 28.3(b). Here, the circuit court's order could not have retroactively tolled speedy trial for docket congestion. Because the circuit court's sua sponte December 4 order retroactively tolled speedy trial, it was insufficient to toll the time for speedy-trial calculations on the basis of docket congestion.

### b. Rule 28.3(h)

Next, the State claims that Parker failed to challenge the circuit court's "good cause" to toll speedy trial, pursuant to Rule 28.3. The State contends that a "lack of forum," in addition to docket congestion, constituted a good-cause exception to the rule that a contemporaneous order was required.

The relevant facts concerning this issue are as follows. In its December 4 order, the circuit court noted that the State had asked for a three-week setting, which was difficult to obtain in an overworked Crittenden County Circuit Court with only two courtrooms. Parker's trial took only five business days—not three weeks. The order also noted that a new prosecutor had been assigned in June 2019 and needed time to prepare. While the circuit court found good cause under Rule 28.3(h) to toll speedy trial, it did not prioritize

15

the trial by setting a new trial date but merely stated that speedy trial was tolled until "these matters can be brought forth for trial[.]"

Rule 28.3(h) provides an exception for "[o]ther periods of delay for good cause." We construe court rules using the same means and canons of construction used to interpret statutes, and our review is de novo, as it is for this court to decide the meaning of a statute or rule. *State v. Van Voast*, 2022 Ark. 195, at 4, 654 S.W.3d 59, 61. The first rule in interpreting a statute is to construe it just as it reads, giving the words their ordinary and usually accepted meaning in common language. *Id.*, 654 S.W.3d at 61.

We read "[o]ther periods of delay for good cause" to mean something unique from docket congestion or lack of a forum, which the rule already provides as a basis to toll speedy trial in subsection (b). We examined what constituted "good cause," pursuant to Rule 28.3(h), in *Tanner v. State*, 324 Ark. 37, 918 S.W.2d 166 (1996). In *Tanner*, the circuit court, at a pretrial hearing and on its own motion, reset Tanner's trial. *Id.* at 39, 918 S.W.2d at 167. The circuit court entered an order excluding the period between the original and new trial dates. *Id.*, 918 S.W.2d at 167. On this issue, we opined,

> In the order excluding time, the trial court expressed its desire to try the Drew County murder case of Frederick Jacobs on a date originally scheduled for Desha County trials, such as the appellant's. However, the fact that a murder trial is pending in an adjacent county does not, without more, constitute an exceptional circumstance.
>
> . . . .
>
> We realize that trial courts may, for a variety of reasons, wish to give priority to pending murder cases. However, when that desire infringes on another defendant's constitutional right to a speedy trial, and on our Rules of Criminal Procedure, it must yield, *unless* there are exceptional circumstances. In those situations, the trial court must note the exceptional circumstances in its order continuing the case. Ark. R. Crim. P. Rule 28.3(b). We hold that the commencement of a capital murder trial

16

on the appellant's scheduled trial date, does not, standing alone, constitute an exceptional circumstance justifying exclusion of time for docket congestion. Likewise, in the absence of any explanation other than that the court preferred to try another case, we hold that the time period in question cannot be excluded for "good cause" pursuant to Rule 28.3(h).

*Id*. at 41–42, 918 S.W.2d at 168–69 (emphasis supplied).

In light of this court's holding in *Tanner*, the only other basis on which to toll speedy trial in the circuit court's December 4 order was the appointment of a new prosecutor in June 2019. As previously stated, the circuit court found in its December 4 order:

In June 2019, Boone Nance, who was the full-time Deputy Prosecuting Attorney for Crittenden County[,] retired. As a result, a new Deputy Prosecuting Attorney, Michael Snell ("Snell"), was assigned to Division 11, who immediately assumed responsibility for this division's trial docket. This necessitated a delay to allow Snell to become familiar with these complex cases, along with numerous other cases that were pending trial in this division. As a result, requiring Snell to conduct the trial of these matters prior to familiarizing himself with these cases prior to October 18th, 2019 would have resulted in considerable prejudice to the State of Arkansas.

We conclude that this new appointment does not constitute other good cause to toll speedy trial after October 18. The order contains no finding that the prosecutor was unable to try the case beginning on October 18, nor does it state whether Snell was the only prosecutor responsible for trying Parker's case. Thus, we conclude that the December 4 order lacked a sufficient basis on which to toll speedy trial on the basis of "other good cause."

c. In-chambers discussion

Finally, the State claims that Parker did not object to the exclusion of the time for speedy-trial purposes. Typically, a contemporaneous objection to the excluded period is necessary to preserve the argument in a subsequent speedy-trial motion if defense counsel is

17

present at the hearing and has an opportunity to object. *See, e.g., Dean v. State*, 339 Ark. 105, 110–11, 3 S.W.3d 328, 331–32 (1999).

The case at bar is similar to *Tanner*, 324 Ark. 37, 918 S.W.2d 166. In *Tanner*, there was nothing in the record to indicate that either Tanner or his counsel was present at the pretrial hearing during which the court reset his trial. *Id.* at 39, 918 S.W.2d at 167. His case was continued, and he waited approximately three months after the first order had been entered—the day before trial—before raising the issue that he had been denied his right to a speedy trial. *Id.*, 918 S.W.2d at 167. We concluded that Tanner did not waive his right to move for dismissal based on a speedy-trial violation because, as indicated by the record, the circuit court continued the case sua sponte, and neither Tanner nor his counsel was at the hearing. *Id.* at 42–43, 918 S.W.2d at 169.

Significantly, in this instance, Parker was not present during a critical-stage, in-chambers discussion. In *Anderson v. State*, 367 Ark. 536, 542, 242 S.W.3d 229, 234 (2006), we stated,

> It is a basic principle of both our state's and our nation's constitutional law that a criminal defendant has the right to be present in person and by counsel at any critical stage in his or her case. *Smith v. State*, 343 Ark. 552, 39 S.W.3d 739 (2001); *Davlin* [*v. State*, 313 Ark. 218, 853 S.W.2d 882 (1993)]. A criminal defendant has a Sixth Amendment right to an attorney at every critical stage of the proceedings. *Hammett v. Texas*, 448 U.S. 725 (1980). A criminal defendant has a due process right to be present at critical stages of the proceeding. *Kentucky v. Stincer*, 482 U.S. 730 (1987). The complete denial of counsel during a critical stage of a judicial proceeding mandates a presumption of prejudice because the adversary process itself has been rendered presumptively unreliable. *Roe v. Flores–Ortega*, 528 U.S. 470 (2000).

> A critical stage in a criminal proceeding is every stage where substantial rights of the criminal defendant may be affected. *Mempa v. Rhay*, 389 U.S. 128 (1967). "A critical stage in a criminal proceeding is characterized by an opportunity for the exercise of judicial discretion or when certain legal rights may be lost if not exercised at that stage." *Commonwealth v. Johnson*, 828 A.2d 1009, 1014 (Pa. 2003).

Here, the record demonstrates that the circuit court conducted an ex parte hearing in chambers without Parker or Dooley present. Donaldson disputed whether he was present for a portion of the discussion concerning Parker, and the circuit court disagreed with Donaldson's recollection. Importantly, however, there is no record of this crucial in-chambers discussion.[1] In addition, the record shows that the circuit court entered the order on December 4, 2019, just over three hours after receiving it from the prosecuting attorney, thereby giving defense counsel little, if any, time to make an objection. The record clearly demonstrates that defense counsel did subsequently object to the scheduling order on December 6, as evidenced by the email attached to the deputy prosecutor's affidavit.

In the absence of a contemporaneous order in compliance with Rule 28, the magnitude of Parker's criminal proceedings and his inviolate right to a speedy trial take precedence over an alleged congested docket and the need for more courtroom space. For these reasons, we hold that the circuit court erroneously found that "there was good cause for delay due to a congested docket" from October 18, 2019, to an indefinite period of time, pursuant to Rule 28.3(h). Thus, we conclude that this particular time period equals 48 days, and as of December 4, 2019, speedy trial had run for a total of 372 days.

---

[1]As a general rule, this court will defer to the superior position of the circuit court to evaluate issues of credibility. *See Holloway v. State*, 363 Ark. 254, 265, 213 S.W.3d 633, 640 (2005). But, contrary to the dissent's assertions, we will not defer to the circuit court's own disputed recollection of an in-chambers discussion when a record of that discussion is not before us.

## 5. December 5, 2019, through January 6, 2020

Parker argues that this time period between December 5, 2019, and January 6, 2020, should not be tolled because the circuit court's December 4 order failed to set a definite trial date. Notably, the circuit court's December 4 order tolled speedy trial until an indefinite date in the future, and Parker filed a motion to dismiss for a speedy-trial violation on January 6.

Rule 28.3(b)(3) states that an order tolling speedy trial for docket congestion must, at the time the continuance was granted, "schedule[] the trial on the next available date permitted by the trial docket." This court has held that failure to do so counts against time running on speedy trial and is not an excluded period. *Moody v. Ark. Cnty. Cir. Ct.*, 350 Ark. 176, 185, 85 S.W.3d 534, 539 (2002). In *Moody*, the circuit court continued a case for seventy days with the notation "older case disposed of." *Id.*, 85 S.W.3d at 539. We held that this notation was insufficient because "a good many older cases might be disposed of in a seventy-day period." *Id.*, 85 S.W.3d at 539.

The State makes the following arguments in support of tolling speedy trial, but its arguments are misplaced. First, as previously noted, it argues that "Appellant's failure to object at the in-camera hearing precludes his challenge to the December 4, 2019, order." But this court does not have a transcript of the in-camera hearing during which Parker and Dooley were not present, and it is unclear from the record whether Donaldson was present to object. Nevertheless, the record does reveal that Parker's counsel did object in an email dated December 6 after reading the December 4 order.

Second, the State cites *Turner v. State*, 2017 Ark. 253, at 4, 526 S.W.3d 822, 824, for the proposition that this court has rejected the requirement to include an actual date for trial for purposes of Rule 28.3. In *Turner*, we noted that a "failure to continue the proceedings until a date certain does not result in automatic reversal." *Id.*, 526 S.W.3d at 824. But we emphasized that the delays in that case were all requested by the defendant. *Id.* at 5, 526 S.W.3d at 825. We concluded that counsel was not ineffective for failing to move for a speedy-trial violation. *Id.*, 526 S.W.3d at 825. In the case at bar, Parker did not request these continuances, which would have been automatically charged against him under Rule 28.3(a). In fact, these continuances were granted for docket congestion under Rule 28.3(b) and should have complied with that section's requirements to reset the trial for the next available date permitted by the docket. Because the order failed to do so, we hold that this time period was not tolled. We conclude that this time period equals 33 days, and as of January 6, 2020, speedy trial had run for a total of 405 days.[2]

## C. Conclusion

In sum, based on the above calculations from May 9, 2018, the date of his arrest, to January 6, 2020, when he filed his motion to dismiss for failure to prosecute within one year, Parker was held for a total of 405 days during which speedy trial was not tolled. This 405-day total exceeds the requisite 365-day period. *See* Ark. R. Crim. P. 28.1(b). Therefore, based on our de novo review to determine whether specific periods of time are excludable

---

[2]Further, we note that the circuit court's December 10, 2019 order scheduled Parker's trial for May 2020. Even if the circuit court's December 4 order was subsequently cured by its December 10 order, only 27 days were tolled, but the speedy-trial calculation still exceeds 365 days.

under our speedy-trial rules, we hold that the State has failed to demonstrate that Parker was brought to trial within the twelve-month period required by Rule 28. *See* Ark. R. Crim. P. 28.1(b). Accordingly, we are left with no choice but to reverse and dismiss. Because we reverse and dismiss on speedy-trial grounds, we decline to reach Parker's remaining arguments on appeal.

Reversed and dismissed.

WOOD, J., concurs.

WOMACK and WEBB, JJ., dissent.

**RHONDA K. WOOD, Justice, concurring.** Today this court follows the rule of law and decides this case based solely on the facts and record before us. Arkansas law requires the State to bring defendants to trial within one year.[1] This rule protects the accused from languishing in jail while awaiting trial and ensures a swift chance to clear their name. The right to a speedy trial is essential to our justice system. And our laws must be applied equally to the guilty and innocent alike. We are one nation with liberty and *justice for all*.

This case is not about guilt or innocence. It is not about whether we believe a defense attorney over a judge or a prosecutor. This case is about our well-established rules governing speedy trial. This defendant faced trial 846 days after the date of arrest, well outside the one-year limit. The State carried the burden to show whether the law allowed the delay.[2] If the

---

[1]Ark. R. Crim. P. 28.1(c).

[2]*Carter v. State*, 2016 Ark. 152, at 3, 484 S.W.3d 673, 675.

delay was for docket congestion, our settled law requires a simultaneous docket entry noting that decision.[3] But here, the trial court entered the order a month later. And when we looked for a transcribed record of the parties' understanding, we found none because the pivotal discussion about delaying trial happened during an off-the-record conversation partly in a judge's office and partly in a hallway. While there were later many excuses, they were not extraordinary ones.

It is easier to uphold the rule of law when the accused is innocent. It is not so easy when a jury found the defendant guilty. Yet we must uphold the rule of law for everyone.

**SHAWN A. WOMACK, Justice, dissenting.** A jury convicted Demarcus Parker for the murder of off-duty Forrest City police officer Oliver Johnson. Today, the majority overturns that conviction and, as a result, Parker will walk free.

In a gang-inspired and retaliatory drive-by shooting, Parker fired a barrage of bullets at a group of teenagers standing outside Officer Johnson's apartment. Once the shooting ceased, Officer Johnson's niece—who was at the home with him and four other children—discovered her uncle lying on his bedroom floor, shaking, because Parker had just shot him in the arm and chest. Officer Johnson died in front of the children. The majority claims that the State took forty days too many to bring Parker to trial. I respectfully disagree and would hold that the State timely prosecuted Parker.

The majority first errs by adopting the court of appeals' analysis in *Smith v. State* and concluding that the circuit court's March 1, 2019, scheduling order—an order that was silent on the issue of speedy trial—superseded an earlier scheduling order. 2021 Ark. App.

---

[3]Ark. R. Crim. P. 28.3(b).

253, at 5, 624 S.W.3d 718, 731. The earlier scheduling order, which the circuit court entered on January 3, 2019, arose from Parker's requested continuance, and the order explicitly tolled speedy trial through March 22nd. When a defendant requests a continuance, "the continuance is granted *until such subsequent date contained in the order or docket entry granting the continuance.*" Ark. R. Crim. P. 28.3(c) (emphasis added). Per the plain language of Rule 28.3(c), orders tolling speedy trial are valid until the date concerning speedy trial contained in the order passes. *See id.* A subsequent order that sets a new date but does not toll speedy trial does not invalidate the earlier speedy-trial exclusion until that original date has passed or a new speedy-trial date is set. *See id.* Therefore, an additional 21 days should be excluded from the majority's speedy-trial calculation.

Next, by repeatedly and misleadingly referring to the circuit court's December 4th order wholly as a tolling of speedy trial under Arkansas Rule of Criminal Procedure 28.3(b), Parker has cleverly pulled the wool over the majority's eyes. Although the order cites, *in part*, docket congestion (including the unavailability of a forum) as grounds for tolling speedy trial against Parker, this is just one of several reasons cited in support of tolling speedy trial against Parker. As the majority recognizes, the circuit court also tolled speedy trial against Parker for other good cause, namely a new deputy prosecuting attorney adopting the case. Ark. R. Crim. P. 28.3(h). The majority's only explanation for why this was insufficient cause is "the order contains no finding that the prosecutor was unable to try the case beginning on October 18, only that he was unable prior to that date."

This is curious to say the least. The circuit court expressly made the following findings in its December 4th order:

In June 2019, Boone Nance, who was the full-time Deputy Prosecuting Attorney for Crittenden County retired. As a result, a new Deputy Prosecuting Attorney, Michael Snell ("Snell"), was assigned to Division 11, who immediately assumed responsibility for this division's trial docket. This necessitated a delay to allow Snell to become familiar with these complex cases, along with numerous other cases that were pending trial in this division. As a result, requiring Snell to conduct the trial of these matters prior to familiarizing himself with these cases prior to October 18th, 2019, would have resulted in considerable prejudice to the State of Arkansas.

This appears to be a clear finding by the circuit court that the State was unable to effectively prosecute Parker not only by the original trial date but also in the several subsequent weeks. Consequently, "other good cause" under Rule 28.3(h) was shown. We routinely defer to a circuit court's finding of fact, which is what this is. *See, e.g.*, *Johnson v. State*, 2015 Ark. 387, at 3, 472 S.W.3d 486, 488. Yet here, the majority concludes, with few details and little analysis, that the circuit court's understanding of its docket, the ability of the parties, and the pace of litigation is inferior to the majority's own understanding of the three. Whether the circuit court could have better worded its explanation is a fair question; nevertheless, to conclude that the circuit court's failure to do so is grounds for reversing Parker's conviction is unwarranted. The circuit court's conclusion was unquestionably that the State was unable to prosecute Parker by the scheduled trial date, and such inability persisted until a three-week special setting was scheduled.

The complexity of the case and the above-discussed logistical difficulties are further detailed in the transcript from the circuit court's hearing to settle the record. There, the circuit court determined that it had held a "Chambers Day" on November 4, 2019, where the new deputy prosecuting attorney, Michael Snell, and one of Parker's attorneys, Bryan Donaldson, were present. This meeting followed the State's October 18 request for a three-

week special setting, which the State had discussed with Parker's counsel. As part of this request, the State asked that speedy trial be tolled from the time of the request to the inception of the trial.

The circuit court, the deputy prosecuting attorney, and the bailiff all similarly recalled that Donaldson was present at this in-chambers meeting, and the State's earlier-sought continuance and accompanying tolling of speedy trial were the topics of discussion. The majority's assertion that this meeting was *ex parte* has no basis in fact; even Donaldson concedes he was present at this meeting. Donaldson only contests the extent to which the meeting focused on Parker. However, considering its own recollection and the recollection of both the deputy prosecuting attorney and the bailiff, the circuit court rejected Donaldson's unique assertion and made the specific findings that, by November 4th,

> there had still been no reply to the October 18 letter from the prosecution discussing the need for a special setting for three weeks, and the three-week special setting request was anticipating trying both of the defendants at the same time. There had been no severance order entered yet . . . . Among other lawyers in chambers and in the hallway leading between the courtroom and chambers were Mr. Snell, Mr. Donaldson, and me. Mr. Dooley did not appear on that day again, and during that break, I—I don't know if Mr. Parker was here that day or not either. I'm thinking not.

> Mr. Donaldson, Mr. Snell, and I—I basically gave Mr. Snell instructions on a continuance order I wanted him to prepare addressing the speedy trial issue and talking about the October 18 letter and that I think in the October 18 letter Mr. Snell may have mentioned how many days were left on the speedy trial and that I needed to get something done, so that the time wouldn't run on this case. We discussed very quickly the logistics of the trial. It wasn't necessary to go into a lot of detail Mr. Donaldson having a very successful criminal practice in Crittenden County knew the obstacles, knows the obstacles that exist, and I basically instructed Mr. Snell on what I wanted the order to say, because we would need to work with other judges to acquire courtroom time and coordinate that with their trial court administrators to carry that out.

I also discussed imposing a discovery deadline and a motions deadline. At the end of that quick discussion, which didn't last 45 seconds to a minute, and I instruct with Mr. Donaldson present, I instructed with Mr. Donaldson present, I instructed Mr. Snell to prepare an order for me addressing the tolling of the speedy trial, so that we could coordinate with other divisions, make arrangements for a special setting, and as I typically do I used a colloquialism that the order needed to include everything "including the kitchen sink" as to the reasons that we couldn't get the three weeks scheduled. That it was going to take a long time to get the three weeks scheduled in which included what other cases were being tried, what the other two divisions of criminal court looked like here in Crittenden County, and our inability to simply transfer this to another judge, because both of the other judges had speedy trial issues looking them in the face just like we did. On then following—and that's what Mr. Snell did following that up and that was basically a sua sponte order by me to the prosecutor in the presence of one of the defense lawyers to do that.

We came back out. We went back on the record. There were no comments by anybody about what had just transpired regarding the scheduling issue for Demarcus Parker. A few days later I sent out a letter with the discovery deadlines and the motion deadlines and then the order that I ended up signing was sent to me on December the 4th. The lawyers for Mr. Parker and for the codefendant were included on that, and I signed the order, and it was filed on—I believe it was filed on December the 4th.

The majority offers no explanation for its rejection of the circuit court's recollection of its own proceedings. Seemingly, the majority has simply—and wrongfully—substituted its judgment for the judgment and memory of the circuit court. When "any difference arises as to whether the record truly discloses what occurred in the circuit court, the difference *shall* be submitted by motion to and *settled by that court* and the record made to conform to the truth." Ark. R. App. P.–Civ. 6(e) (emphasis added). Although this court may require the circuit court to settle the record, it is the circuit court—not this court— that determines what truly occurred. *Id*. And while our review of an alleged speedy-trial violation is de novo, that review is based on the record before us. *Perkins v. State*, 2019

Ark. 247, at 2, 582 S.W.3d 1, 2. It is impossible for the majority to make some of the factual assertions it does without completely disregarding the record and the facts within.

This court does not generally have the responsibility of evaluating the credibility of the participants in a trial, but a judgment of credibility appears to be exactly what the majority has undertaken here, as it has deviated from the dictates of our own rules. Inexplicably, the majority has elected to cast aside the veracity of both the circuit judge and the prosecutor and dismiss their recollection of events in favor of Donaldson's, which I find particularly concerning.

Analyzing only the facts contained in the record, it is clear the December 4th order validly tolled speedy trial against Parker. While the state argues that this portion of the tolling should cover from October 19, 2019, through January 6, 2020, it undoubtably covers at least December 4, 2019, through January 6, 2020. When an order tolls speedy trial against a defendant for other good cause, the circuit court is not required to include specific technical recitations in its order, as is required when tolling for docket congestion. *Compare* Ark. R. Crim. P. 28.3(b) *with* 28.3(h). The only requirement is that the circuit court enter a "written order or docket entry, [which] shall not be necessary for the court to make . . . until the defendant has moved to enforce his right to a speedy trial." Ark. R. Crim. P. 28.3. Contrary to the majority's assertions, the circuit court's December 4th order did this. Despite Parker's attorneys' knowledge of the requested continuance on October 18, 2019, Parker waited until December 6, 2019, to object to the accompanying tolling of speedy trial. Assuming *arguendo* that Parker's counsel did not receive any of the State's emails concerning the continuance for a three-week special setting, Parker's counsel undoubtedly

28

knew of the October 18th continuance request and accompanying tolling of speedy trial by the November 4th "Chambers Day." Yet again, Parker's counsel sat on their hands for over a month, as neither objected to the already known (and mutually agreed upon) tolling of speedy trial until two days after the circuit court entered its written order on December 4th.

Accordingly, the December 4th order properly tolled speedy trial against Parker from at least the date of the order until Parker filed his motion to dismiss on January 6, 2020, which is a total of 33 days. This, coupled with the 21 days excluded between March 1 and March 22, reduces the majority's erroneous calculation of 405 days to a correct 351 days— i.e., 14 days shy of the speedy-trial deadline. *See* Ark. R. Crim. P. 28.1(b). As a result, the State timely prosecuted Parker, and his conviction and sentence should be upheld. The majority's holding otherwise is a tragedy. In no sense is there Justice in such a result.

I dissent.

WEBB, J., joins in this dissent.

**BARBARA W. WEBB, Justice, dissenting.** I agree with and join Justice Womack's dissent. I write separately to state additional reasons why the majority has erred in dismissing Parker's conviction for want of a speedy trial. While the right to a speedy trial is enshrined in both the Sixth Amendment to the Federal Constitution and article 2, section 10 of the Arkansas Constitution, neither document details what is meant by "speedy" and how this right is to be protected. Indeed, the Supreme Court of the United States has called the right to a speedy trial "amorphous." *Barker v. Wingo*, 407 U.S. 514, 522 (1972). Accordingly, there certainly is no definitive way to give effect to this right.

29

In what appears to be the earliest consideration of this issue in the state, nearly 170 years ago, the Arkansas Supreme Court noted in *Stewart v. State*, 13 Ark. 720, 720 (1853), that a speedy trial "is a trial conducted according to fixed rules, regulations, and proceedings of law, free from vexatious, capricious and oppressive delays, manufactured by the ministers of justice." The *Stewart* court concluded that the general statutory requirement of hearing a case within three terms of a circuit court was not an inflexible rule if the delays were attributable to good cause.

In *Barker*, *supra*, the Supreme Court recognized that the right to a speedy trial is "generically different" from any of the other rights enshrined in the Constitution for the protection of the accused. The *Barker* Court recognized that there are competing interests in how soon a criminal defendant must be brought to trial. *Id*. While acknowledging that the states are free to create their own procedural rules, the *Barker* Court determined that the Constitution does not require the two "inflexible approaches" used by the majority of the states—the fixed-time-period rule, which is the basis for our Rule 28.3, and a demand-waiver rule whereby the accused was required to assert the right to a speedy trial at each proposed delay. *Id*. Finding both unsatisfactory, the *Barker* Court adopted instead a balancing test in which the conduct of both the prosecution and the defense are weighed, relying on four factors. *Id*. These factors are (1) length of delay, (2) the reason for the delay, (3) the defendant's assertion of his right, and (4) prejudice to the defendant. *Id*. The *Barker* test is an eminently sound approach. The *Barker* Court noted that the right of a speedy trial is necessarily relative. *Id*. It is noteworthy that the *Barker* Court held that Barker was not deprived of his right to a speedy trial even though he was tried *six years* after his arrest. *Id*.

Applying the *Barker* test to the case at bar, the delay in trying this case was a mere matter of days, and much of that time, Parker was at liberty until he violated the conditions of his release. The reason for the delay centered on the State's ability to properly prepare to try the case, securing an adequate courtroom, and the desire to try Parker at the same time that the State tried his codefendant. Regarding the other factors, Parker was not required under Arkansas law to demand to be tried, and there was no apparent prejudice to the defense's case. To the extent that the delay in bringing Parker to trial had any bearing on the proceedings, it was the memories of the State's witnesses that seemed to be affected. Furthermore, under the *Stewart* definition of speedy trial, which is still good law, there is no evidence of "vexatious, capricious and oppressive delays, manufactured by the ministers of justice." 13 Ark. at 720. Accordingly, this case should be affirmed.

Finally, even without the necessary correction in how this court views speedy trial, this case should be affirmed. Contrary to the majority's interpretation of Rule 28.3, it is not the docket entry that tolls speedy trial, it is the circuit court's finding that justice requires the exclusion of certain time that tolls speedy trial. The docket entry merely memorializes the circuit court's findings. Certainly, the circuit court made ample findings that justice required that Parker be tried.

I dissent.

*Lassiter & Cassinelli*, by: *Michael Kiel Kaiser*, for appellant.

*Leslie Rutledge*, Att'y Gen., by: *Kent Holt*, Ass't Att'y Gen.; and *Michael Zangari*, Ass't Att'y Gen., for appellee.