Kenneth Roland WALKER *v.* STATE of Arkansas

CA CR 84-104                              680 S.W.2d 915

Court of Appeals of Arkansas
Division II
Opinion delivered December 12, 1984
[Rehearing denied January 16, 1985.]

*J. Marvin Holman,* for appellant.

*Steve Clark*, Att'y Gen., by: *Velda P. West*, Asst. Att'y Gen., for appellee.

JAMES R. COOPER, Judge. The appellant was convicted by a jury of theft by receiving in violation of Ark. Stat. Ann. § 41-2206 (Repl. 1977) and terroristic threatening in violation of Ark. Stat. Ann. § 41-1608 (Repl. 1977). He received sentences of fifteen years and six years, respectively. For reversal, the appellant argues that the trial court made four errors warranting reversal: 1) by not granting his motion for a directed verdict on both counts; 2) by admitting some of the State's evidence; 3) by failing to declare a mistrial after a witness referred to the appellant's prison record; and 4) by admitting certain testimony of the appellant's accomplice. We find no merit in any of these assignments of error and therefore we affirm his convictions.

The State's version of the facts of this case and the appellant's version are in total conflict. According to the State's witnesses, the appellant participated in the theft of a pickup truck in Missouri with an accomplice, Kenneth Reed. At trial, Reed, testifying for the State, stated that the appellant recruited him into the operation. He stated that in August, 1982, the appellant drove him to Springfield, Missouri to steal a pickup truck. According to Reed, the appellant dropped him off at a Kawasaki dealership where he convinced a salesman to permit him to test drive a Toyota truck. Reed stated that he drove the stolen truck back to Arkansas and parked it near the appellant's home. Reed said that he later sold the Toyota truck and delivered half the proceeds to the appellant who accepted the money. Unknown to Reed, the buyers of the Toyota truck were undercover State Police officers. Reed acknowledged that although his negotiations with the buyers of the stolen Toyota occurred within 150 feet of the appellant's home, the appellant was not present at the sale. Reed also testified to the details of two other truck thefts he and the appellant committed jointly, and he testified that the appellant masterminded the entire car theft operation.

To corroborate Reed's testimony pertaining to the theft charge, the State introduced a tape recording, made by the

police officers, of conversation between the officers, the accomplice Reed, and the appellant. The conversation dealt generally with arrangements for future sales of stolen trucks. At one point in the conversation the following exchange occurred with regard to the stolen Toyota truck, which was the basis of the charge in the case at bar:

HENDERSHOTT: Me and him done some business, and there wasn't no heat behind it and everything went down fine, I made some money on it, and I wouldn't hold that little old unit for 24 hours, and that sone (sic) of a bitch was gone boy

REED: (inaudible)

HENDERSHOTT: And that was a nice little piece of equipment and it went

REED: There is a lot heat floating around Coal Hill about that.

HENDERSHOTT: About what?

REED: About, just around Coal Hill

HENDERSHOTT: About that truck?

WALKER: Yeah, it's gone isn't it?

HENDERSHOTT: Oh, unless that sone (sic) of a bitch can speak Spanish, we haven't got any problems. I doubt if it even looks the same anymore

WALKER: (inaudible) Is that the one I drove

REED: Yeah

It was during this taped conversation that the appellant allegedly threatened to kill the officers by declaring:

WALKER: I'll tell you what I done partner, you set here and let me tell you something. They charged me in

Tulsa, Oklahoma and there was a whole bunch of people and I went by my _____ self and the judge, when they started sentencing me, said Mr. Walker, we'll put you on a plane and you'll land in California, your family's there, he said, we want 3 names and I said, I can't give them to you. You ask any _____ _____ that turns me around, _____, I'm an old man, I'm subject to chop his head off. You dig me? You blame me? . . .

WALKER: I'll tell you what and I'm not bull _____ you, I don't care if you are the man, and I go down and do a _____ 5, I'll come out, I'm going to kill you, cause I'm too old to go . . .

WALKER: I'm too old to go, I don't blame you, but if they bust me, I'll tell you what, I every one of my kids fall dead if I look at you and don't kill you, I said I never seen your (inaudible) before in my life.

The officers testified that they felt the threats were real and that they were frightened by the appellant's promises to kill them.

The appellant took the stand and denied having anything to do with the sale or theft of the Toyota truck. He admitted to being present at the conversation taped by the undercover police officers, but denied asking Reed if he had driven the Toyota truck. He admitted that he might have threatened the officers because he was angry with one of them, but said that he did not have any intention of actually killing them.

The appellant first argues that the trial court should have granted his motion for a directed verdict on the theft by receiving charge. Directed verdict motions are challenges to the sufficiency of the evidence. *Glick* v. *State,* 275 Ark. 34, 627 S.W.2d 14 (1982). The appellant bases this argument on Ark. Stat. Ann. § 43-2116 (Repl. 1977) which requires that the testimony of an accomplice be corroborated by other independent evidence which tends to connect the defendant with the crime. It is the appellant's contention that the State adduced no evidence which corroborated the theft by

receiving charge and, therefore, the trial court should have granted his directed verdict motion.

The test for determining the sufficiency of corroborating evidence is whether, if the testimony of the accomplice were totally eliminated from the case, the other evidence independently establishes the crime and tends to connect the accused with its commission. *Henderson* v. *State,* 279 Ark. 435, 652 S.W.2d 16 (1983). After a careful review of the abstracted testimony, excluding the accomplice Reed's direct testimony, we find that the State's tape recording of the appellant is sufficient corroboration of Reed's direct testimony pertaining to the theft by receiving charge. The appellant's question regarding the Toyota truck, "Is that the one I drove" and Reed's affirmative response, tend to connect the accused with the commission of the crime. This exchange between the appellant and Reed, in the context of the discussion regarding the Toyota truck, independently establishes the crime of theft by receiving. The appellant's remarks independently establish that he had control of the Toyota truck and that he knew it was stolen. Of course, this evidence of itself would not be enough to sustain a conviction, however, it need not be — it need only tend in some degree to connect the accused with the crime, *Klimas* v. *State,* 259 Ark. 301, 534 S.W.2d 202 (1976).

With respect to the appellant's motion for a directed verdict on the terroristic threatening charge, the appellant argues that the State's evidence does not prove that he directly threatened the undercover officers; instead, the appellant contends that the State proved, at most, that he conditionally threatened to kill the officers when he promised to kill them if they arrested or informed on him. The appellant's construction of the statute is that it only criminalizes present, but not future, death threats. This argument was rejected in *Richards* v. *State,* 266 Ark. 733, 585 S.W.2d 375 (1979).

Next, the appellant argues that the trial court erred in admitting into the State's case-in-chief three tapes, two audio and one video, made by undercover police officers, written transcripts of the audio tapes, and photographs of

two pickup trucks. At a pre-trial suppression hearing, the appellant objected to the introduction of the audio tapes and the transcriptions of them because the tapes were generally inaudible and because the parties to the conversation were not identified on the tape. The appellant objected to the introduction of the written transcription because they were prepared by the State. He objected that the video tape was irrelevant as to proof of *his* guilt because the tape showed only Reed, the accomplice, selling the truck to the under-cover officers. There were no objections at the pre-trial hearing nor at trial to the introduction of the photographs of the truck.

At the suppression hearing the trial court listened to the audio tapes, read the transcriptions of them and watched the video tape. The court admitted the audio tapes and the video tape into evidence on the basis of their relevancy. The jury was allowed to read the transcripts merely to assist them in understanding the audio tapes, however, the transcripts of the audio tapes were not admitted into evidence and the jury was instructed, in case of a variation between the tapes and the transcripts, to be guided by the tapes and not by the transcripts. The trial court also instructed the jury to disregard any parts of the audio tapes that were inaudible.

The appellant's objection to the State's introduction of the audio tapes is a challenge to their authenticity. At trial, an undercover police officer, who was present when the tapes were recorded, testified as to their accuracy and authenticity. This testimony was sufficient to authenticate the tapes. Ark. Unif. Rule of Evidence 901(b)(1). In deter-mining the authenticity of taped statements, the trial court has some discretion and in the absence of evidence indi-cating tampering with the evidence we will not reverse the trial court's ruling unless we find an abuse of discretion. *Gardner v. State,* 263 Ark. 739, 569 S.W.2d 74 (1978). We find no such abuse in the trial court's decision to admit the audio tape.

The appellant also objected to the admission of the audio tapes because they were inaudible. The trial court listened to the tapes and found that they were sufficiently

audible to be understood. The admissibility of tape recordings containing inaudible portions is a matter within the sound discretion of the trial court, and we will not reverse unless there has been an abuse of that discretion. *U.S.* v. *Bell*, 651 F.2d 1255 (1981). *See,* 57 ALR 3d 749-54. We find no abuse of discretion here.

There were no objections to the introduction of the photographs of the stolen trucks, therefore, we will not consider this point. *Wicks* v. *State*, 270 Ark. 781, 606 S.W.2d 366 (1980). As for the video tape, the appellant argues that it is irrelevant but he does not show how the introduction of the video tape, showing Reed selling the Toyota truck to an undercover police officer, *prejudiced him.* The appellant has the burden of demonstrating error, and that burden is not met by showing the mere possibility of error. *Butler* v. *State,* 264 Ark., 243, 570 S.W.2d 272 (1978). The appellant has demonstrated no prejudice. The transcripts of the audio tapes were not introduced, and were only to be used as an aid to the jury. Therefore, we fail to see how the appellant was prejudiced.

Next, the appellant alleges that the trial court erred in refusing to declare a mistrial when one of the undercover officers stated that the appellant told them he had previously been to the penitentiary. He argues that the officer's answer was not responsive and was so prejudicial that his motion for a mistrial should have been granted. On cross-examination, the appellant's attorney asked one of the undercover officers "how did that (appellant's threat to kill the officers) happen?" The officer's statement that the appellant had been to the penitentiary was responsive to the question because it explained the appellant's motivation behind his threats: he had been in prison once before and he was determined not to go again, or, if he went, he was determined to kill those who were responsible.

Finally, the appellant alleges that the trial court should not have allowed testimony by Reed concerning the theft of other trucks by Reed and the appellant. The trial court ruled that the testimony concerning other crimes committed by the appellant and his accomplice was admissible under Ark.

Unif. Rules of Evidence 404 (b) as evidence of intent and plan. The trial court's ruling was correct. The appellant denied that he had any knowledge of the sale of the Toyota truck. To prove the appellant's guilty knowledge, evidence of other criminal acts under similar circumstances is admissible to show a system, design, or guilty knowledge. *Vernon* v. *State*, 2 Ark. App. 305, 621 S.W.2d 17 (1981).

Affirmed.

CLONINGER and CORBIN, JJ., agree.