Cite as 2021 Ark. App. 151

# ARKANSAS COURT OF APPEALS
## DIVISION I
### No. CR-19-811

| | |
|---|---|
| CORTEZ BAREFIELD | **Opinion Delivered:** April 7, 2021 |
| APPELLANT | APPEAL FROM THE PHILLIPS COUNTY CIRCUIT COURT [NO. 54CR-17-28] |
| V. | |
| STATE OF ARKANSAS | |
| APPELLEE | HONORABLE CHALK MITCHELL, JUDGE |
| | AFFIRMED |

### STEPHANIE POTTER BARRETT, Judge

Appellant Cortez Barefield was convicted by a Phillips County jury of murder in the second degree. He was sentenced as a habitual offender to sixty years' imprisonment and fined $7500. Barefield asserts as his sole point on appeal that the circuit court erred in denying his motion to dismiss the charges for lack of a speedy trial. We affirm.

Because Barefield does not challenge the sufficiency of the evidence to support his conviction, a brief recitation of the facts will suffice. Monique Scaife worked with the Arkansas State Police as a confidential informant. On December 15, 2016, Scaife called investigator Jason Martin to tell him Barefield had killed someone and had taken him to see the corpse, later identified as Trent Lunsford, which was located near a cemetery in rural Phillips County. Barefield told Scaife that he was going to receive $14,000 for shooting Lunsford.

Authorities arrested Barefield in a bathroom at a residence in Phillips County. At the time of his arrest, Barefield had two 9 mm rounds in his front pants pocket and a Tech 9 MasterPiece Arms 9 mm gun with him. The gun was not functional at the time Barefield was arrested.

During an interview after his arrest, Barefield admitted he had been at the cemetery when Lunsford was shot, but he claimed a bald white guy named Dustin shot Lunsford. Barefield said he took the gun from Dustin because he felt safer, and he said he took credit for the killing only to make himself "look hard."

Testimony at trial revealed that some items of Barefield's clothing had gunshot residue on them. The autopsy indicated Lunsford had been shot four times—in his temple, in his cheek, on top of his head, and in the back of this right shoulder—with only the temple wound showing evidence of close-range firing. The chief firearm and toolmark examiner testified that she received a MasterPiece Arms 9 mm firearm to test, but it was nonfunctioning when she received it. She attempted to make a silicon cast of the barrel to compare with the bullets removed from Lunsford, but the results were inconclusive. The gun was made operable and resubmitted to the crime lab, and she was then able to determine that three bullets recovered from Lunsford's body were fired from the MasterPiece Arms firearm.

The sole issue on appeal is whether the circuit court erred in denying Barefield's motion to dismiss for lack of a speedy trial. Under Arkansas Rule of Criminal Procedure 28.1, a defendant must be brought to trial within twelve months unless there are periods of delay that are excluded under Arkansas Rule of Criminal Procedure 28.3. *Gamble v. State*,

350 Ark. 168, 85 S.W.3d 520 (2002). If the defendant is not brought to trial within the requisite time, the defendant is entitled to have the charges dismissed with an absolute bar to prosecution pursuant to Arkansas Rule of Criminal Procedure 30.1. *Eagle v. State*, 2012 Ark. 371. Once the defendant presents a prima facie case of a speedy-trial violation, the State has the burden of showing that the delay was the result of the defendant's conduct or was otherwise justified. *Romes v. State*, 356 Ark. 26, 144 S.W.3d 750 (2004). We conduct a de novo review to determine whether specific periods of time are excludable under our speedy-trial rules. *McCray v. State*, 2020 Ark. 172, 598 S.W.3d 509.

The time for speedy-trial calculation commences on the date of arrest or service of summons. Ark. R. Crim. P. 28.2(a) (2020). Barefield was arrested on December 16, 2016. His trial began on February 12, 2019. On February 11, Barefield's counsel orally moved to dismiss the charge based on failure to receive a speedy trial. The filing of a speedy-trial motion tolls the running of the time for a speedy trial under our rules. *Eagle*, *supra*. We calculate the time from Barefield's arrest to the filing of his motion to dismiss for a speedy-trial violation to be 789 days. Barefield presented a prima facie case of a speedy-trial violation; therefore, it was the State's burden to prove that the delay was due to Barefield's conduct or was otherwise justified.

The docket indicates there were four motions for continuance filed by Barefield. The period of delay resulting from a continuance requested by the defendant or his counsel is excluded from the computation of time for speedy trial and is calculated from the date the continuance is granted until the subsequent date specified in the order or docket entry granting the continuance. Ark. R. Crim. P. 28.3(c) (2020).

Barefield's first motion for continuance was granted on April 11, 2017, and the case was continued to September 11, 2017, a period of 154 days. His second motion for continuance was granted on February 26, 2018, and the case was continued to July 23, 2018, but an amended motion was filed on the same day granting the continuance until April 30, 2018, which is 64 days. On April 30, 2018, Barefield's motion for his third continuance was granted, and the case was continued to July 23, 2018. Because April 30 was included in the calculation for the second continuance, this period of time is 84 days. Barefield's fourth continuance was granted on July 24, 2018, and the case was continued to November 19, 2018, a period of 119 days. There are 421 excludable days due to Barefield's motions for continuance. When subtracted from 789, we are left with 368 days.

The period excluded by the circuit court for speedy-trial purposes and contested by Barefield concerns the State's November 30, 2018 motion for continuance due to the unavailability of a material witness and evidence. That motion was granted on November 30, continued the case until February 11, 2019, and excluded 74 days for purposes of computing time for speedy trial. If this period is excludable, there is no speedy-trial violation.

The State's November 30 motion asserted the case should be continued for two reasons. First, although the gun Barefield was found with at the time of his arrest was not functional and could not be test-fired for comparison with the bullets recovered from Lunsford's body, and the silicone casts made of the gun barrel for microscopic comparison were inconclusive, the prosecutor's office had been made aware on November 28 that a supplemental examination of the weapon could be conducted if the pistol was made

4

operable for test-firing. The State posited that the interest of justice required that all available scientific methods should be employed to test the evidence in the case. Second, the State claimed Monique Scaife was a material witness, but he remained unavailable as a witness due to a pending mental evaluation ordered in a separate criminal case in which he was a defendant. The State asserted it had exercised due diligence to obtain both the gun testing and Scaife's testimony for trial, believed both would be available at a later date, and asked that the period of time attributable to the continuance be excluded for purposes of computing time for speedy trial.

The circuit court, finding good cause, granted the State's motion for continuance in an order filed on November 30.[1] The continuance was granted because of the unavailability of a material witness as well as the unavailability of evidence material to the State's case. The circuit court further found that the State had exercised due diligence to obtain the witness and evidence for trial, there were reasonable grounds to believe both would be available at a later date, and the period of delay resulting from the continuance would be excluded from computing time for speedy-trial purposes.

---

[1]The hearing regarding the State's November 2018 motion for continuance was an unrecorded telephonic conference. At the hearing on Barefield's motion to dismiss for lack of speedy trial, the circuit court, the prosecuting attorneys, and the defense attorneys reconstructed what occurred during that telephonic conference to the best of their recollection. While the prosecutor said he did not recall defense counsel objecting to the State's motion for continuance, defense counsel stated that he believed he remembered objecting to it. The circuit court stated that it did not think the defense had agreed to the continuance but had acknowledged that it would be a good idea to determine if the weapon in question was the one used in the murder. Defense counsel now raises its concern that the State might argue that no contemporaneous objection was made in the telephonic conference regarding its objection to the continuance and to the exclusion of time for speedy-trial purposes. The State asserts that in the absence of any further record of the telephonic conference, it would not claim the speedy-trial argument is barred for lack of a contemporaneous objection.

At the pretrial hearing on Barefield's motion to dismiss, the prosecutor recalled that there was a suggestion in the telephonic conference regarding the State's motion for a continuance that if the gun could be made operable again, the crime lab could attempt to test-fire it in an effort to make comparisons between the test-fired ammunition and the bullets pulled from Lunsford's body, which could possibly lead to exculpatory evidence for Barefield. The prosecutor thought there was an agreement that every effort should be made to make the gun operable and have it test-fired, which was exactly what occurred.

With regard to the availability of Scaife as a witness, Barefield's counsel argued Scaife was not unavailable, as he was an inmate in the Arkansas Department of Correction, and the State failed to exercise due diligence to have Scaife transported to the courthouse. The State argued it was waiting to see if Scaife was truly available as a witness until the pending mental evaluation was completed in the case in which he was a criminal defendant.

At the close of the pretrial hearing, the circuit court noted that while it thought Barefield's counsel had not agreed to the continuance, it believed counsel had acknowledged that it might be a "great idea" to find out whether the 9 mm pistol was actually the weapon used in the murder as the previous comparison attempts were inconclusive. The circuit court further determined Scaife needed to be evaluated to determine whether he was competent to defend himself, which made him unavailable. The circuit court declined to change its decision on the order excluding the time of the State's continuance from the speedy-trial calculation, and it denied Barefield's motion to dismiss on speedy-trial grounds.

On appeal, Barefield argues the State did not demonstrate due diligence in waiting to perform further tests on the gun until two years after his arrest. A grant of a prosecutor's

request for a continuance is excludable from the computation of time for speedy-trial purposes "if the continuance is granted because of the unavailability of evidence material to the state's case, when due diligence has been exercised to obtain such evidence and there are reasonable grounds to believe that such evidence will be available at a later date." Ark. R. Crim. P. 28.3(d)(1) (2020). Clearly, whether the 9 mm pistol found with Barefield at the time of his arrest was the weapon used to kill Lunsford was evidence material to the State's case against Barefield. The gun was inoperable when it initially arrived at the crime lab. Silicon casts of the barrel were made in an attempt to make a comparison between the casts and the bullets taken from Lunsford's body, but the results were inconclusive. The State was made aware in late November 2018 that the crime lab would attempt further testing if the gun could be made operable, and a request for continuance was made on that basis. The gun was, in fact, made operable and test-fired; comparisons were made; and the crime lab's chief firearm and toolmark examiner testified at trial that the bullets removed from Lunsford's body were fired from that gun. We hold that the circuit court correctly determined the time for the State's continuance was excludable for speedy-trial purposes. Because we affirm the exclusion on this basis, it is not necessary to address the merits of Barefield's argument regarding the availability of Scaife as a witness.

Affirmed.

ABRAMSON and VAUGHT, JJ., agree.

*Laura Avery*, for appellant.

*Leslie Rutledge*, Att'y Gen., by: *Christopher R. Warthen*, Ass't Att'y Gen., for appellee.