Cite as 2024 Ark. App. 329

# ARKANSAS COURT OF APPEALS
### DIVISION I
No. CR-22-777

| | | |
|---|---|---|
| BRENDAN BURNS | | Opinion Delivered  May 22, 2024 |
| | APPELLANT | APPEAL FROM THE ARKANSAS COUNTY CIRCUIT COURT, NORTHERN DISTRICT [NO. 01SCR-14-70] |
| V. | | |
| STATE OF ARKANSAS | | HONORABLE DONNA GALLOWAY, JUDGE |
| | APPELLEE | |
| | | AFFIRMED |

## RITA W. GRUBER, Judge

Brendan Burns was tried by a jury and convicted of aggravated robbery, theft of property valued at $1000 or less, and third-degree battery.  He was sentenced to ten years' imprisonment and fines. The charges arose from a July 4, 2014, incident at a gas station in Stuttgart, Arkansas. Mr. Burns contends on appeal that his right to speedy trial was violated; the circuit court abused its discretion by admitting surveillance footage of the robbery into evidence, because it was not properly authenticated; the circuit abused its discretion by permitting a witness to testify to hearsay; there was insufficient evidence to support his convictions; and he is prejudiced on appeal by an inadequate record. We affirm, addressing the points as follows.

*I. Whether Burns is Entitled to Reversal of His Convictions Because He is Prejudiced on Appeal by an Inadequate Record*

The record before us on appeal includes exhibit No. 1, but the video is not in viewable form.[1] Mr. Burns contends that because the surveillance video that is part of the record on appeal is not viewable on the flash drive, this court's inability to view the video prevents the court from reviewing his challenge to the sufficiency of the evidence. We do not agree.

One of the victims in this case, Michelle Harper, testified that State's exhibit No. 1—the surveillance video—definitely, fairly, and accurately represented the events of July 4 except that there was "no sound." She testified that a young man came in while she was working alone. She recognized his face even though she did not know his name at that time, but she had seen him ten to twelve times previously. In the courtroom, she identified the defendant, Mr. Burns, as the young man in the store on July 4. She said that she recognized him as the individual whom management had directed her not to allow into the station, and she told him he needed to leave.

She testified that the man came to her register and said, "You need to give me some money." Thinking he was joking, she refused. But then he reached down and said, "B****, don't make me do this," and she thought he was about to pull a gun and use it to enforce

---

[1]In a pretrial hearing, defense counsel requested that the record reflect there had been "difficulties" with the video. He stated that he had not been able to play the video on either his desktop or his laptop computer but had seen it at the police department the previous week. Counsel stated that the prosecutor "made arrangements to let Mr. Burns go across the street with myself and the bailiff to give him an opportunity to view the store video. I know that had been a stick[ing] point in being able to proceed. So, I think that that part has been taken care of."

his directive to give him the money. He ran around the counter, shoved her onto it and hemmed her in, opened the register, and took money. She ran across the street as fast as she could, thinking he might kill her. She testified that she was bruised on her back and shoulder as a result of the incident, and she said that photographs that were introduced as State's exhibits fairly and accurately represented the bruises.

The video from the store's surveillance cameras was played for the jury, with Ms. Harper narrating the events while they were being shown on the video. While the action was being displayed in the video footage, she identified Mr. Burns as the perpetrator of the robbery, assault, and theft. The video was played for a second time during the testimony of Patricia Vincent, the manager of the gas station, and for a third time when employee Chris Owens testified: each of them watched the surveillance video and identified Mr. Burns, a former employee, as the person on the video who robbed the gas station. They additionally testified they went to the store on July 4 after getting a phone call about the robbery, watched the video at police officers' request, and identified Mr. Burns on the video. During jury deliberations, the jury requested a thumb drive containing State's exhibit No. 1 and a laptop in order to view the video. The circuit court granted the request, and the exhibit was taken into the jury room for viewing.

Mr. Burns argues that the evidence identifying him as the perpetrator was less than compelling, contending that the State's witnesses merely narrated the video's content and that their testimony was not based on their own personal observations. This disregards Ms. Harper's testimony.

In *Lewis v. State*, 354 Ark. 359, 362, 123 S.W.3d 891, 893 (2003), the record lodged on appeal failed to include a photo lineup that was introduced at the omnibus hearing. The original photo lineup was never located, and the court reporter tendered a black-and-white photocopy of the original photo array along with an affidavit. Lewis argued on appeal that without the original photo lineup in the record, his conviction should be reversed. *Id.* The *Lewis* court did not agree. It explained that although a complete record is preferred, a full and complete record is not necessary. Instead, the record on appeal is evaluated to determine whether it is sufficient for the appellate court to perform a review of the claimed errors. A record may be sufficient even though it contains uncorrectable omissions. *Ward v. State*, 321 Ark. 659, 906 S.W.2d 685 (1995) (per curiam); *Bell v. State*, 296 Ark. 458, 757 S.W.2d 937 (1988). It is the appellant's duty to demonstrate that prejudice results from the state of the record. *Lewis*, 354 Ark. at 363, 123 S.W.3d at 893.

Here, the record is sufficient for us to review the sufficiency of the evidence. Ms. Harper—who was both an eyewitness and a victim—unequivocally identified Mr. Burns during her trial testimony. It was up to the jury to decide the credibility and weight of her testimony. Her testimony alone is sufficient to sustain a finding that Mr. Burns was the person who committed these crimes.

## II. *Sufficiency of the Evidence*

We address a challenge to the sufficiency of the evidence before reviewing allegations of other trial errors. *Buckley v. State*, 2023 Ark. App. 330, at 6, 669 S.W.3d 631, 637. Only evidence that supports the verdict is considered, and it is viewed in the light most favorable

to the State. *Id.* When an appellant challenges the sufficiency of the evidence, we will consider only the evidence supporting the verdict and will affirm if substantial evidence supports it. *Id.* Substantial evidence is evidence of such sufficient force and character that it will, with reasonable certainty, compel a conclusion one way or the other without resort to speculation or conjecture. *Green v. State*, 2013 Ark. 497, at 5, 430 S.W.3d 729, 736. We need only consider the testimony supporting the verdict of guilty; circumstantial evidence may provide a basis to support a conviction but must be consistent with the defendant's guilt and inconsistent with any other reasonable conclusion. *Id.* at 5, 430 S.W.3d at 736.

A motion for directed verdict is a challenge to the sufficiency of the evidence. *Dixon v. State*, 2011 Ark. 450, at 8, 385 S.W.3d 164, 171. We do not address arguments concerning the sufficiency of the evidence to support a conviction if the defendant did not move for a directed verdict on that charge. *Railey v. State*, 2023 Ark. App. 433, at 4, 675 S.W.3d 912, 915. A party cannot change the grounds for an objection or motion on appeal but is bound by the scope of argument made at trial. *Id.*

In the present case, appellant challenges the sufficiency of the evidence regarding his three convictions below. In his motion for a directed verdict, however, he did not challenge the sufficiency of the evidence on the battery charge. His argument to the circuit court was as follows:

> The State has not offered sufficient evidence for the charge of aggravated robbery against Ms. Harper and or the Conoco Superstop. They've not put on a credible witness that was able to positively identify Mr. Burns as the person that was in the Superstop on January–on July the 4th. There's also been insufficient evidence that Mr. Burns was the person who entered or remained at the Superstop for the

5

purpose of committing a theft. That he was represented by words or conduct he was armed or employed or threatened to immediately to employ physical force. No one uh, so, because there's been no testimony from law enforcement agents or any evidence other than what seems to be somewhat incredible, not as credible as it should be testimony we'd ask that you'd direct the verdict as to count one of aggravated robbery.

Appellant's challenge to the sufficiency of the evidence for his battery conviction is not preserved for our review because he did not move for a directed verdict on that basis. Under the standards of review recited above, we now address the sufficiency of the evidence regarding his convictions for aggravated robbery and theft of property.

Pursuant to Arkansas Code Annotated section 5-36-103(a)(1) (Supp. 2021), a person commits theft of property if he knowingly takes or exercises unauthorized control or makes an unauthorized transfer of interest in the property of another person with the purpose of depriving the owner of the property. As charged here, a person commits aggravated robbery if he or she commits robbery as defined in § 5-12-102 and "represents by word or conduct that he or she is armed with a deadly weapon." Ark. Code Ann. § 5-12-103(a) (Repl. 2013). A person commits robbery if, with the purpose of committing theft, the person employs or threatens to immediately employ physical force upon another person. Ark. Code Ann. § 5-12-102(a) (Repl. 2013).

Appellant argues on appeal, as he did below, that there was not sufficient evidence showing he was the person who committed theft and aggravated robbery in the Conoco store. We reject his argument.

6

Michelle Harper, a victim of the crimes, was working alone on July 4. She testified at trial that she did not know appellant's name at the time but recognized him when he entered the store, she had seen him on previous occasions, and management had informed her he was not to be allowed in the store. She later learned his name, and she identified him at trial as the person shown by video footage of the store's surveillance cameras portraying the commission of the crimes.

Two employees, who were not present when the crimes were committed, testified that they received phone calls on July 4 shortly afterward. They both testified that they viewed the surveillance video footage and identified appellant to the police that day; each of them also identified appellant as the video was again played during their testimonies at trial.

The trier of fact is free to believe all or part of any witness's testimony and resolve any inconsistencies in the evidence, and the testimony of one eyewitness alone is enough to sustain a conviction. *Castle v. State*, 2023 Ark. App. 52, at 5–6. Three witnesses identified appellant as the perpetrator shown by the surveillance camera's video footage. Ms. Harper—who was both the eyewitness and the victim of the crimes—unequivocally identified Mr. Burns during her trial testimony; her testimony also supported the charges against him. We hold that the evidence presented at trial was sufficient to identify appellant as the perpetrator of the aggravated robbery and theft.

### III. *Right to Speedy Trial*

The Sixth Amendment to the United States Constitution provides that in all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial. Our supreme

court adopted Arkansas Rule of Criminal Procedure 28 for the purpose of enforcing the constitutional right to a speedy trial. *Parker v. State*, 2023 Ark. 41, 660 S.W.3d 815. Arkansas Rule of Criminal Procedure 28.1 establishes that there is a twelve-month limitation period for trying a defendant. Once the defendant makes a prima facie showing of a speedy-trial violation, i.e., that his or her trial took place outside the speedy-trial period, the burden shifts to the State to show that the delay was the result of the defendant's conduct or was otherwise justified. *Parker*, 2023 Ark. 41, at 11, 660 S.W.3d at 824. The appellate court conducts a de novo review to determine whether specific periods of time are excludable under our speedy-trial rules. *Id.* at 12, 660 S.W.3d at 824.

The time for trial begins to run on the date of the defendant's arrest or service of summons. Ark. R. Crim. P. 28.2(a). It continues to run uninterrupted except during any applicable "excluded periods" set forth in Rule 28.3. The filing of a speedy-trial motion tolls the running of the time for a speedy trial under our rules. *Barefield v. State*, 2021 Ark. App. 151, at 3.

The general rule is that a contemporaneous objection to an excluded period is not necessary to preserve the argument in a subsequent speedy-trial motion if there was no hearing in which the excluded period was discussed in the presence of the defendant or his counsel. *Jacobs v. State*, 2023 Ark. App. 554, at 12, 682 S.W.3d 15, 23. Periods excluded from speedy-trial computation "shall be set forth by the court in a written order or docket entry, but it shall not be necessary for the court to make the determination until the defendant has moved to enforce his right to a speedy trial pursuant to Rule 28 unless it is

specifically provided to the contrary" in Rule 28. Ark. R. Crim. P. 28.3. On appeal, we conduct a de novo review to determine whether specific periods of time are excludable. *Ray v. State*, 2023 Ark. App. 515, at 15–16, 678 S.W.3d 882, 893.

Mr. Burns was arrested on December 19, 2017. The parties agree that speedy trial began to run on this date. He contends that his trial began on November 18, 2021; thus, he established a prima facie showing of a speedy-trial violation because 1430 days has passed. While the State agrees that Mr. Burns made a prima facie showing, the State correctly asserts that the time ran until he filed his motion for speedy trial on October 13, 2021, which totaled 1394 days. *Barefield*, *supra* (the filing of a speedy-trial motion tolls the running of the time for a speedy trial under our rules). Mr. Burns agues on appeal that the following periods of time, subpoints A–I, are applicable to his claim that his right to speedy trial was violated.

### A. Speedy Trial Ran from December 19, 2017, to March 15, 2018 (86 Days)

The parties agree that speedy trial ran from December 1, 2017, to March 15, 2018. This amounts to 86 days charged to the State.

### B. Speedy Trial was Tolled from March 15, 2018, to April 26, 2018 (42 Days)

The parties agree that this time was tolled because Mr. Burns wanted to hire a private attorney. This amounts to 42 days excluded.

### C. Speedy Trial Ran from April 26, 2018, to July 19, 2018, Because the Circuit Court's Docket Entry Tolling this Time was Erroneous (84 Days)

Mr. Burns contends that the circuit court's decision to exclude this period is erroneous because he was appointed counsel on April 26. At the speedy-trial (ST) hearing,

9

the circuit court found that the delays from March 2018 to December 2018 were excluded because they were caused by Mr. Burns's attempts to hire an attorney.

The record reveals that on April 26, Mr. Burns did not have an attorney, and the court appointed a public defender and reset the trial for July 19, 2018. The docket sheet shows this time is tolled. However, at the ST hearing, Mr. Burns argued that this time period should not be excluded because there was no contemporaneous order explaining why the trial was continued or that the time was tolled. The circuit court disagreed and concluded that the trial was continued at that time due to Mr. Burns's actions and that the time was tolled.

The April 26 docket sheet contains the following notation:

> D APPEARED FOR JT TODAY WITHOUT AN ATTY; HE HAD SAID IN COURT THAT HE DID NOT WANT A PD AND WOULD HIRE AN ATTY; NO ATTY APPEARED FOR D TODAY; MR. MOLOCK HAS PREVIOUSLY BEEN RELIEVED; THE DEPUTY PD WAS APPOINTED TODAY AND THE JT IS RESET FOR 7/19/18; CONTINUANCE CHARGED TO D; PERIOD BETWEEN 4/26/18 AND 7/19/18 IS AN EXCLUDED PERIOD FOR SPEEDY TRIAL PURPOSES.

Mr. Burns argues that he was appointed counsel on April 26 and that any delay could not be attributed to him. He states that any failure on the circuit court's part to communicate to the public defender that he had been appointed or the public defender's failure to enter an appearance could not be attributed to Mr. Burns. He cites *Glover v. State*, 307 Ark. 1, 817 S.W.2d 409 (1991), to support his argument. The *Glover* court held that through no fault of his own, Glover was not represented, and a defendant should not have to choose between the right to a speedy trial and the right to be represented by an attorney.

Here, Mr. Burns was not represented on April 26 because he requested time to hire an attorney. On April 25 at the pretrial, he reported that his attorney would be there the following day for trial. But on April 26, no private counsel arrived. Thus, the circuit court had to appoint the public defender since the first one had previously been relieved due to Mr. Burns's dissatisfaction and desire to hire private counsel. *Glover* is distinguishable because the delay was not due to the defendant.

In *Blackwell v. State*, 338 Ark. 671, 674–75, 1 S.W.3d 399, 401 (1999), the circuit court's ordering a continuance to permit new counsel additional time for trial preparation was a delay for good cause attributable against the defendant. *Id.* at 674, 1 S.W.3d at 400–01. The *Blackwell* court noted that appointment of a new counsel was required as a result of Blackwell's inability to work with his counsel and because the State's case involved a "massive" amount of documents. *Id.*; *see also Parker v. State*, 93 Ark. App. 472, 476, 220 S.W.3d 238, 243 (2005) ("When the defendant is scheduled for trial within the time for speedy trial, and the trial is postponed due to the need for the appointment of new counsel, this delay is excludable for good cause pursuant to Rule 28.3(h).").

Mr. Burns distinguishes *Blackwell* because the massive amount of evidence in that case required more time and also distinguishes *Divanovich v. State*, 273 Ark. 117, 617 S.W2d 345 (2000), in which the defendant moved for disqualification because defense counsel had become a prosecutor. Those distinctions do not undermine the fact that Mr. Burns stated he would have counsel present on April 26 when the case would have gone to trial, but he

11

still had no counsel on that date. Thus, the court appointed new counsel and set a new trial date. The circuit court was correct in excluding this time period of 84 days.

D. Speedy Trial Ran from July 19, 2018, to December 6, 2018, Because There is Nothing in the Record Tolling this Time (140 Days)

The docket sheets contain no indication of what happened during this period between July 19 and October 4, 2018. An October 4, 2018 entry states, "Order appointing public defender and for defendant to contact public defender." An October 15, 2018 entry states that jury trial was set for December 15.

Mr. Burns and the State agree there is the no explanation for this delay . The State, for purposes of appeal, assumes "without conceding" that the time ran from July 19 until December 3, when the circuit court granted its motion for continuance. The State argues that the time ran only to the date of the hearing, which was December 3.  We note, however, that the prosecutor prepared the order of continuance setting forth the date of December 6; therefore, the State cannot now argue that the time ran only December 3. Speedy trial thus continued to run for the time period from July 19 to December 6, which is 140 days.

E. Speedy Trial Ran from December 6, 2018, to December 11, 2018 Because Tolling for a State-Requested Continuance Begins on the Date in the Order or Docket Entry Granting the Continuance (5 Days)

At a pretrial hearing on December 3, 2018, the State asked for a continuance due to the unavailability of witness Detective Eric Brown—the case officer who had interviewed witnesses and done most of the investigatory work—because he had recently been deployed overseas by the United States military. A transcript of the December 3, 2018 hearing

indicates that Mr. Burns was in attendance, but his appointed counsel (Mr. Stoner) was not. The prosecutor stated his understanding that Detective Brown would be overseas for at least a year and was not expected to return until sometime in late 2019. Rather than keep Mr. Burns in jail for a year, the prosecutor had authorized Mr. Burns's release on a $50,000 signature bond. The prosecutor said he had made Mr. Stoner aware of what he was going to do. Mr. Burns did not object.

The court granted the continuance, setting a pretrial date of October 28, 2019, setting trial for November 21, 2019, and ruling that the delay would be excluded due to the unavailability of the witness. The court asked if the prosecutor would be preparing the order of continuance; the prosecutor said that he would do so once the date was set. The subsequent written order of continuance was filed on December 12, 2018, "nunc pro tunc" to December 6. It granted the State's motion for continuance due to the unavailability of Detective Brown and recited that trial was continued from December 6, 2018, to November 21, 2019—the earliest date available to ensure the return of Eric Brown from military duty. Additionally, the order noted that excessive or undue hardship to Mr. Burns was avoided by arrangement for his release upon the posting of a signature bond.

The date the order was entered nunc pro tunc, December 6, 2018—rather than the date the order was filed—controls the date that tolling began. *See, e.g.*, *Miles v. State*, 348 Ark. 544, 552, 75 S.W.3d 677, 682 (2002) ("A *nunc pro tunc* order may be entered to make the court's record speak the truth or to show that which actually occurred."). Additionally, given that the State prepared this order, we find no merit in the State's argument on appeal that

13

the date should be December 3. The five days between December 6 and December 11 are tolled from the running of speedy trial.

F. Speedy Trial Ran from December 11, 2018, to November 4, 2019, Because the Circuit Court's December 11, 2018 Order was Insufficient to Toll Speedy Trial (328 Days)

Rule 28.3 provides in part:

(d) The period of delay resulting from a continuance (calculated from the date the continuance is granted until the subsequent date contained in the order or docket entry granting the continuance) granted at the request of the prosecuting attorney, if:

(1) the continuance is granted because of the unavailability of evidence material to the state's case, when due diligence has been exercised to obtain such evidence and there are reasonable grounds to believe that such evidence will be available at a later date . . . .

*See also Williams v. State*, 2024 Ark. 7, at 15, 682 S.W.3d 313, 323 (upholding excluding period where State's expert was unavailable for trial).

The December 12, 2018 order states that Detective Brown, who conducted witness statements and did most of the investigatory work, was deployed by the military overseas for a period of one year and would not return until late 2019. Mr. Burns argues on appeal, as he did at the ST hearing, that Detective Brown was not a material witness because he had not been subpoenaed for the first two trial settings. Mr. Burns concludes that because Detective Brown thus was not "unavailable" under the rule, the time should not be excluded. The State suggested at the hearing that officers do not have to be subpoenaed, although other officers had been subpoenaed for the first two trial settings.

The State argues that Mr. Burns's argument is not preserved because he failed to make a contemporaneous objection. The general rule is that a contemporaneous objection to an excluded period is not necessary to preserve the argument in a subsequent speedy-trial motion if there was no hearing in which the excluded period was discussed in the presence of the defendant or his counsel. *Jacobs*, 2023 Ark. App. 554, at 12, 682 S.W.3d at 22. Citing *Parker*, 2023 Ark. 41, 660 S.W.3d 815, Mr. Burns argues that he did not have to object to the State's request for a continuance because his counsel was not present at the hearing. *Parker* is distinguishable because it involved a determination of whether there was good cause for delay due to the congested docket, which is different than an unavailable witness. Although counsel in *Parker* objected after the order was entered, it appeared as though neither counsel nor Parker was present at the in-chambers meeting, and there was no record of the hearing. Our supreme court held that Parker had not waived his right to a speedy trial by failing to make a contemporaneous objection.

Here, unlike in *Parker*, there is a record of the hearing. The order at issue states that it was served on Stoner, who was Mr. Burns's appointed counsel. There is no objection in the record to this order. Although Stoner was not at the December 3 hearing, Mr. Burns was there and made no objection. He had been released as a result of this request for a continuance, and the hearing transcript reveals that Stoner was made aware of what was happening. We held in *Smith v. State*, 2021 Ark. App. 253, at 7, 624 S.W.3d 718, 722, "Without contemporaneous—or at a minimum, first-opportunity—objections to these orders, Smith's arguments are not preserved." (Footnote omitted.) We observed that Smith's case

15

was unlike *Tanner v. State*, 324 Ark. 37, 42–43, 918 S.W.2d 166, 169 (1996), which held that an appellant did not waive his right to move for dismissal based on a speedy-trial violation when the record showed that the circuit court continued a case sua sponte and without the appellant or counsel at the hearing. *See also Robertson v. State*, 2019 Ark. App. 73, at 5, 568 S.W.3d 323, 326 (holding that because there was no hearing and no indication from the record that appellant's counsel had an opportunity to object, appellant did not waive his right to move for dismissal).

The circuit court correctly excluded this 328-day time period.

### G. Speedy Trial Was Tolled from November 4, 2019, to January 23, 2020 (80 Days)

The parties agree that ST was tolled due to Mr. Burns's request for a continuance. This is 80 days tolled.

### H. Speedy Trial Ran from January 23, 2020, to April 5, 2021, Because Burns Was Not Absent or Unavailable (438 Days)

Mr. Burns argues that the circuit court incorrectly found that speedy trial was tolled from January 23, 2020, to April 5, 2021. He states that the January 23 trial did not occur, and the record is unclear as to why. He contends that nothing in the record indicates that his whereabouts were unknown. He argues also that the State failed to show why he had not been arrested.

At the October 2021 hearing, the State argued that Mr. Burns failed to appeal in January 2020, and a failure-to-appear (FTA) warrant was issued. Mr. Burns argues that the record does not contain a copy of the warrant or the January 23 transcript. The State

16

contends that the FTA was documented on the circuit court's docket sheet. There were also three status hearings on February 24, June 8, and September 8, 2020, where the prosecutor indicated that Mr. Burns had not been picked up on the FTA.

The docket sheet shows a "1-23-20 arrest warrant issued," and a June 9, 2020 entry indicates "report on FTA status 9/7/20." Subsequently, the docket sheet includes "arrest warrant served" on April 7, 2020.

Mr. Burns made no argument about this time period to the circuit court.[2] Even at the hearing on the motion to dismiss, he did not challenge it. Therefore, his argument is not preserved. *See Smith*, 2021 Ark. App 253, at 3, 624 S.W.3d at 720 (refusing to consider time period not argued below) (citing *Hall v. State*, 2020 Ark. App. 135, at 4, 594 S.W.3d 175, 178 (restricting speedy-trial inquiry to the time period contested below)). Even if considered, it is meritless. Arkansas Rule of Criminal Procedure 28.3(e) provides that a period of delay resulting from the absence or unavailability of the defendant is excluded for speedy-trial calculation. A defendant is considered absent when his whereabouts are unknown. *See also Ray v. State*, 2023 Ark. App. 515, at 17, 678 S.W.3d 882, 894 (holding that Ray's failure to appear started tolling the speedy-trial clock under Ark. R. Crim. P. 28.3(e)).

The time from his FTA on January 23, 2020, until his arrest on the FTA is excluded. This amount amounts to 438 days tolled.

I. Speedy Trial Ran from April 5, 2021, to November 18, 2021 (227 Days)

---

[2]His motion to dismiss based on speedy-trial violations indicates that the time appeared to be tolled for this period.

Mr. Burns contends that the circuit court incorrectly found that speedy trial was tolled on his case from January 23, 2020, to his trial on November 18, 2021. He argues that regardless of whether speedy trial was tolled on January 23, 2020, it began to run again on the date of his rearrest on April 5, 2021. He further argues that the State offered no reason for excluding this time period and that when the record is silent, the time runs pursuant to case law. *See, e.g.*, *Parker*, *supra.*

The State again contends that Mr. Burns did not contest this period, and as such, we should not consider it. The State correctly argues that the time period between the defendant's failure to appear until the next trial date should be excluded for purposes of calculating speedy trial. *See Osborn v. State*, 340 Ark. 444, 447, 11 S.W.3d 528, 530 (2000) "We do not view the trial court's resetting of a trial date under these circumstances as a traditional continuance. It is clear from the record that Osborn failed to appear for trial on October 17, 1997. It is further clear from the record that Osborn's trial was rescheduled for the first available trial date, after his return to Arkansas.").

Mr. Burns absconded from January 23, 2020, until he was arrested on April 5, 2021. At the next hearing on May 10, his counsel asked for trial to be set, which was November 18. Mr. Burns asserts there is no indication this is the next available date, but it appears from the transcript that the court asked the case coordinator for a date, she offered the date of November 18, and the defense offered no objection. Thus, the court correctly excluded these 227 days.

In conclusion, the 84 days from December 19, 2017, to March 15, 2018, and the 140 days from July 19, 2018, to December 6, 2018, are chargeable to the State. This amounts to 226 days, which is within the one year allowed. Thus, Mr. Burns's right to a speedy trial was not violated.

IV. *Whether the Circuit Court Abused its Discretion by Admitting the Surveillance Footage of the Robbery Because it Was Not Properly Authenticated*

Mr. Burns contends that the circuit court abused its discretion by admitting the surveillance footage of the robbery because there was insufficient proof of chain of custody. Ms. Harper testified that she worked at the gas station for eight months; the gas station had multiple cameras; the surveillance system was working the day she was robbed and assaulted; and she went back and looked at the video. Mr. Burns objected when the State sought to introduce the surveillance video during her testimony. The basis of his objection was that she could not authenticate the video and that the State had not laid a proper foundation to show she was in control of the recorded footage or the one who removed the footage. She testified, however, that the video accurately depicted what had occurred on the day of the incident in which she was the victim.

Mr. Burns contends that the circuit court abused its discretion in admitting the video footage without proper authentication and because the State failed to prove chain of custody. The State suggests that the chain-of-custody issue is not preserved. Although defense counsel did not initially use the phrase "chain of custody," he did state that the State had not laid the proper foundation to show that Ms. Harper was in control of the footage or was the one

who removed it. When the State asked to play the video, he renewed his objection of improper foundation along with a "chain of custody issue." Although the court had just said the video was admitted, it entertained the argument but overruled the objection.

Arkansas Rule of Evidence 901(a) provides that the requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims. *Goins v. State*, 2019 Ark. App. 11, at 8, 568 S.W.3d 300, 305. Rule 901 further states that the "[t]estimony of a witness with knowledge that a matter is what it is claimed to be" can authenticate evidence, and also that "[a]ppearance, contents, substance, internal patterns, or other distinctive characteristics, taken in conjunction with circumstances" can be used to authenticate evidence. Ark. R. Evid. 901(b)(1), (4). The purpose of establishing a chain of custody is to prevent the introduction of evidence that has been tampered with or is not authentic. *Goins, supra*. Authentication requirements are satisfied if the circuit court concludes, in its discretion, that the evidence is genuine and that, in reasonable probability, it has not been tampered with or altered in any significant matter. *Id.* In determining the authenticity of taped statements, we have stated that the circuit court has some discretion, and in the absence of evidence indicating tampering with the evidence, we will not reverse the circuit court's ruling unless we determine there was an abuse of discretion. *Walker v. State*, 13 Ark. App. 124, 680 S.W.2d 915 (1984); *Gardner v. State*, 263 Ark. 739, 569 S.W.2d 74 (1978).

*Owens v. State*, 363 Ark. 413, 415, 214 S.W.3d 849, 850 (2005), addressed the admissibility of still photographs taken from the convenience store video, which were introduced through the victim, the store clerk. Our supreme court affirmed, finding that it was not essential for purposes of laying a proper foundation that the person who actually took the still photographs from the videotape be in court to testify. *Id.* at 420, 214 S.W.3d at 854. In the present case, similarly, the victim and eyewitness to these crimes testified that the video footage from the store's surveillance cameras depicted the scene accurately.

Mr. Burns offers no support for his argument that Ms. Harper had to be the custodian or have knowledge of how the surveillance system worked in order for the video to be introduced. Here, there is no allegation that the surveillance video had been tampered with. Ms. Harper testified that the cameras were always on and that the footage introduced accurately depicted what occurred on July 4.

The State argues that the chain-of-custody argument is not preserved. During Ms. Harper's direct examination, the State moved to introduce the surveillance video. Mr. Burns objected and alleged that the video was inadmissible because Harper did not authenticate it; he failed to mention chain of custody. The circuit court overruled the objection, and the video was introduced as State's exhibit 1. Subsequently, the State sought to play the already admitted video, and Mr. Burns renewed his earlier objection. He also alleged that there was "a chain of custody issue." The circuit court overruled the objection. The chain-of-custody statement was too late to preserve the issue for appeal because the evidence was already admitted when the objection was made. *See Guydon v. State*, 344 Ark. 251, 254, 39 S.W.3d

767, 769 (2001) (stating that a "chain-of-custody objection made after the evidence [had] been admitted [was] not timely" and, thus, failed to preserve the issue on appeal); *see also Cummings v. State*, 353 Ark. 618, 641, 110 S.W.3d 272, 286 (2003) (concluding that an objection was untimely when it was made after the evidence already had been admitted).

We hold that the circuit court did not abuse its discretion in admitting the video footage at trial.

### V. *Whether the Circuit Court Abused its Discretion in Allowing Michelle Harper to Testify to Hearsay*

At trial, Ms. Harper testified that she had been told by her boss not to allow Mr. Burns in the store. He asserts that Ms. Harper's boss was not a witness at trial and subject to cross-examination and that this statement was introduced for the truth of the matter asserted.

Hearsay evidence is generally inadmissible except as provided by law or by the rules of evidence. Ark. R. Evid. 802; *Bragg v. State*, 328 Ark. 613, 946 S.W.2d 654 (1997). Hearsay is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted. Ark. R. Evid. 801(c).

The State argued at trial that it showed her mindset that day, and the court ruled that it was not offered for the truth of the matter asserted. We find no abuse of discretion in this ruling. An out-of-court statement that is offered to show the basis for the witness's actions, however, is not hearsay under Rule 801(c). *Dednam v. State*, 360 Ark. 240, 246, 200 S.W.3d 875, 879 (2005).

Furthermore, Mr. Burns failed to object each time the alleged hearsay statement was made. *Morgan v. State*, 2021 Ark. App. 344, at 8, 632 S.W.3d 759, 764 (citing *Conte v. State*, 2015 Ark. 220, at 29, 463 S.W.3d 686, 704) (a defendant must object at the first opportunity, and he must then renew his objection each time the issue is raised; otherwise, he has waived his argument regarding the issue for appeal). Evidence that is merely cumulative or repetitious of other evidence admitted without objection cannot be claimed to be prejudicial. *Gonzalez v. State*, 306 Ark. 1, 3, 811 S.W.2d 760, 761 (1991).

Patricia Vincent, Ms. Harper's manager, also testified to the same effect without objection, and Mr. Burns offered Harper's written statement during cross-examination that contained the same statement. Mr. Burns additionally argues on appeal that Harper's statement was improper character evidence under Ark. R. Evid. 403 and that the prejudice outweighed any probative value. These arguments were not made below and therefore are not preserved for our review.

In summary, we hold that the circuit court did not abuse its discretion in admitting Harper's testimony that management had told her not to allow Mr. Burns to enter the store. This point is affirmed.

Affirmed.

ABRAMSON and WOOD, JJ., agree.

*Lassiter & Cassinelli*, by: *Michael Kiel Kaiser*, for appellant.

*Tim Griffin*, Att'y Gen., by: *Brooke Jackson Gasaway*, Ass't Att'y Gen., for appellee.